BUILDING INSPECTOR OF FALMOUTH *vs.* NORMAN GINGRASS
& another.

Barnstable.    December 4, 1958. — January 7, 1959.

Present: WILKINS, C.J., RONAN, WILLIAMS, COUNIHAN, &
WHITTEMORE, JJ.

*Zoning.   Airplane.   Garage.   Hangar.   Words,* "Motor vehicle."

Storage of a private seaplane in a large garage erected together with a
dwelling under a building permit from a town authorizing erection of a
dwelling and "garage & storage" on premises abutting a pond on
which the Massachusetts aeronautics commission authorized the sea-
plane to be based and located in a single residence district under the
zoning by-law of the town was not permitted under the by-law as a
"use of land or a building customarily incident to and located on the
same lot with another use of land or a building," or by the authoriza-
tion of a garage in view of use of that word in the by-law as describing
a storage place for "cars." [275–276]
No unreasonable classification existed and no constitutional question was
presented by reason of failure of a town's zoning by-law, which per-
mitted use of land for "Airports and landing strips and buildings or
structures necessary thereto" in districts zoned for agriculture, busi-
ness, light industry and heavy industry, to permit use of land and
buildings for storage of planes in residential zoning districts. [276–277]

BILL IN EQUITY, filed in the Superior Court on Decem-
ber 27, 1957.

The suit was heard by *Hudson,* J.

*Gerald P. Walsh,* for the defendants.

*John P. Sylvia, Jr.,* for the plaintiff.

WHITTEMORE, J.  This as an appeal from a final decree of
the Superior Court which enjoined the defendants from us-
ing, for the storage of a seaplane, a garage being constructed
on their residential property abutting Oyster Pond in Fal-
mouth.   The findings show inter alia that the garage was
being built under a permit from the building commissioner
which authorized a "Dwelling — 41′ x 36′" and "Garage
& storage — 41′ x 31′"; that the defendants intended to

use the large garage for two automobiles and the plane; that the plane was intended for private use; and that the registration which had been issued to the defendant Norman Gingrass by the Massachusetts aeronautics commission authorized basing the plane on Oyster Pond. It also appears that the defendants' land is in a district classified in the zoning by-law for single residences, that it was acquired and the garage was erected in expectation of using the plane on Oyster Pond, and that the plane was moved from the pond into the garage on two rails with the use of a dolly. The judge ruled that the use of the garage to store the plane violated the zoning by-law. There was no error.

1. The storage of a seaplane on a residential lot was not permitted as an accessory use under the by-law. The by-law defined "Accessory Use or Building" to mean "A use of land or a building customarily incident to and located on the same lot with another use of land or a building." For our purposes, at its broadest, the by-law authorized in the single residence district, with a single residence, uses accessory thereto including a garage for two cars or up to four cars under permit from the selectmen.

The authorization of a garage did not permit the housing of a plane. A garage is, primarily, at least, a building for the storing of motor vehicles. See *Riverbank Improvement Co.* v. *Bancroft,* 209 Mass. 217, 222. An airplane is not a motor vehicle under G. L. c. 231, § 85A; this term, in common and statutory usage, is identified with surface vehicles. *Rich* v. *Finley,* 325 Mass. 99, 107–108. The by-law uses the word "garage" to describe a storage place for "cars."[1] Such expansibility if any as there may be in the concept expressed by the word as used in the by-law does not, we think, include a plane. The large size of the garage authorized by the permit and the reference in the permit to "storage" do not increase the defendants' rights.

---

[1] Section 17 (b) reads: "Garage space for not more than two cars shall be permitted as an accessory use in residence districts, provided that the Selectmen may permit space for an additional car for each 2000 square feet by which the area of the lot exceeds the minimum requirements, but not for over four cars."

There is no implication in the by-law that the storage of a plane will be permitted as an accessory use in the single residence district. See *Needham* v. *Winslow Nurseries, Inc.* 330 Mass. 95, 101; *Pratt* v. *Building Inspector of Gloucester,* 330 Mass. 344, 346. *Mioduszewski* v. *Saugus,* 337 Mass. 140, 143–144. There was no finding that any planes were customarily kept on residential lots in Falmouth or in Massachusetts. The findings as to increased use of planes do not furnish any basis for a conclusion that a hangar is, impliedly, an accessory building. That the lot abuts water is immaterial in this connection. The relevant findings are: "The increase in this Commonwealth of the number of planes privately owned and not used for the purpose of scheduled air flights, is evidenced by the following statistics: In the year 1915, 1; 1916, 6; 1939, 456; 1945, 685; 1955, 1,584; in 1957, 1,573, of which 200 are seaplanes. As of the present time there are 95 private planes based in Barnstable County."

2. Failure to provide for hangars or to allow storage of planes in residential districts is not unreasonable classification and no constitutional question is presented. The by-law permits in districts classified for agriculture, business, light industry and heavy industry the use of land for "Airports and landing strips and buildings or structures necessary thereto." Even when maintenance of private airplanes has become a common and usual occurrence in Massachusetts it will by no means necessarily follow that reasonable classification will require that each owner be allowed to keep his plane on his own land. Perhaps the time will come when there will be force in the contention that it is unreasonable to bar an owner whose residential lot, ample in size, adjoins a landing field or water surface, which the owner may lawfully use for ascent or descent, from storing his plane on his own property. We intend no suggestion. The well known properties of airplanes, the concomitants of their use, and the uncertainties still existing as to the effect on the community of the general use of private planes, now in its early stages, amply support the restrictions which this

by-law imposes. That these defendants because of the location of their land and the permit from the aeronautics commission could use their land for storage with less risk of disturbance or hurt to others, and indeed slight if any disturbance beyond that involved in basing the plane on the pond, does not as of now, in any event, require that there be in the by-law a special classification of such land and other land so located. The classification by the by-law was a reasonable exercise of zoning power. Not every special case can be provided for. See *Euclid* v. *Ambler Realty Co.* 272 U. S. 365, 395; *Inspector of Bldgs. of Lowell* v. *Stoklosa,* 250 Mass. 52, 60–61; *Spector* v. *Building Inspector of Milton,* 250 Mass. 63, 70–71; *Wilbur* v. *Newton,* 302 Mass. 38, 42–43; *Building Commr. of Medford* v. *C. & H. Co.* 319 Mass. 273, 279; *Seekonk* v. *John J. McHale & Sons, Inc.* 325 Mass. 271, 274; *Lexington* v. *Simeone,* 334 Mass. 127, 131. Compare *Nectow* v. *Cambridge,* 277 U. S. 183, 188; *Pittsfield* v. *Oleksak,* 313 Mass. 553, 556; *122 Main St. Corp.* v. *Brockton,* 323 Mass. 646, 651; *Barney & Carey Co.* v. *Milton,* 324 Mass. 440, 449; *Caputo* v. *Board of Appeals of Somerville,* 331 Mass. 547, 549. The statute, G. L. c. 40A, § 15, and the by-law make provision for variances where literal enforcement involves hardship.

3. We have considered all the points made by the defendants. The entry must be

*Decree affirmed.*