SAMSA, ZONING INSPECTOR, ET AL., APPELLANTS, v. HECK
ET AL., APPELLEES.

(No. 5941—Decided October 25, 1967.)

*Messrs. Buckingham, Doolittle & Burroughs, Mr. Timothy F. Scanlon, Messrs. Arter, Hadden, Wykoff & Van Duzer* and *Mr. John D. Leech,* for appellants.

*Messrs. Brouse, McDowell, May, Bierce & Wortman* and *Mr. Norman S. Carr,* for appellees.

DOYLE, J. This is a suit in equity originally filed in the Court of Common Pleas of Summit County, wherein the plaintiffs (David L. Samsa, Zoning Inspector for Northampton Township; the Musical Arts Association [Cleveland Symphony Orchestra]; and others who were joined as parties plaintiff under Sections 519.24 and 2307.191, Revised Code) sought to enjoin the defendants, Ronald L. Heck and Jacqueline A. Heck, owners of land in Northampton Township, from allegedly violating a township zoning resolution by constructing an "airstrip, airfield or landing strip" upon their property to be used in the operation of their own private airplane and the planes of their guests who may see fit to use it.

The defendants allege that they intend to establish a private landing strip for the purposes heretofore stated and to erect a garage "in which to house said aircraft," and that the "airstrip will be constructed and operated in conformity with the rules and regulations promulgated by the Federal Aviation Administration for the regulation of such airstrips." The defendants admit that "Northampton Township has passed a zoning resolution and * * * that said resolution prohibits the construction, establishment or maintenance of a private or commercial airport, airfield or airstrip at any place in Northampton Township; but * * * that such act or zoning resolution is inapplicable to these defendants and that said Township authorities and electorates are without power or authority to prohibit the establishment of defendants' airstrip."

Pursuant to trial on the issues joined, the Court of Common Pleas entered its decree denying the application for injunction.

The plaintiffs, having been denied the relief sought in the lower court, have now appealed to this court on ques-

tions of law and fact. We meet the issues here in a trial *de novo.*

Northampton Township, in which the land in question is situated, has adopted, under the provisions of Chapter 519, Revised Code, a comprehensive zoning resolution in which the lands in the unincorporated areas are divided into districts. The subject land is in a district designated for zoning purposes as R-1. Article 5 of the resolution in regulating the use of land in an R-1 district is, in pertinent part, in the following terms.

" 'R-1' District Regulations.

"Section A-1—Use Regulations: A building or premise within an 'R-1' Residence District *shall be used only* for the following purposes. \* \* \*

"Section A-1b—Single Family Dwelling, Two-Family Dwelling:

\* \* \*

"Section A-1c—Accessory buildings and *uses customarily incident* to any of the above uses and not involving the conduct of a business including:

"(1) Quarters for hired help employed on the premises.

"(2) Private garage but not to exceed space for four (4) vehicles.

"(3) Roadside stands, offering for sale only agricultural products which are produced on the premises."

Article 2 of the resolution, under the heading "Definitions," stipulates that, for the purpose of this resolution, the words accessory building or use mean a subordinate building or use *customarily incident* to, and located on the same lot occupied by the main building and use including swimming pools. (Emphasis ours.)

It is obvious, from the wording of the resolution, that we are not confronted with a restriction on the use of land, which sets forth prohibited uses, thus, possibly, making uses permissible which are not specifically prohibited, but that we do have a resolution worded in the affirmative as to uses permitted and, as a consequence, uses not expressly permitted are prohibited. In respect to resolutions of this character, we find no legal barrier and find them generally

proper under the police power of the state and, in turn, under the authority of local subdivisions of the state granted zoning powers by the General Assembly of the state.

The entire zoning ordinance of Northampton Township divides the township territory of approximately 19-½ square miles into districts extending from purely residential districts to commercial districts, i. e., retail business, industrial, etc., with the character of the regulations of each made dependent upon the primary purposes for which each district is set apart. In the purely residential district, the prohibition of uses which may be made of the land and buildings, because of the affrmative wording of the resolution, appears to be based upon the idea that excluded uses would be inconsistent and incompatible with the general plan for maintaining a strictly residential area; not necessarily that they would be harmful or create nuisances.

This theory of zoning legislation, calling for the restriction of the use of land and buildings in specified districts of a township to residential purposes, finds support in the fact that, in the judgment of the township's legislative body, the restriction is designed to promote the public health, safety and general welfare of the community.

Case law, in speaking of the right of courts to intervene in legislation of this character, may be found in many Ohio cases. In *Curtiss* v. *Cleveland,* 170 Ohio St. 127, at 130, Judge Taft observed:

" * * * In enacting such legislation, a legislative body is presumed to have decided that such legislation does bear such a real and substantial relation [to the public health, safety, morals or general welfare] and is not unreasonable or arbitrary. Whether such legislation bears such real and substantial relation and whether it is reasonable or arbitrary are questions committed in the first instance to the judgment and determination of the legislative body, and the decisions of such legislative body on those questions will not be disturbed unless they appear to be clearly erroneous. * * * [cases cited]."

Again, in *Willott* v. *Beechwood,* 175 Ohio St. 557, at 560, Judge O'Neill states:

98

"'* * * The legislative, not the judicial, authority is charged with the duty of determining the wisdom of zoning regulations, and the judicial judgment is not to be substituted for the legislative judgment in any case in which the issue or matter is fairly debatable.''

As we view the zoning legislation now before us, in the light of the facts established upon trial, we cannot, and do not, find that the judgment of this court should supersede that of the township officials; and we find the legislation under consideration falls well within constitutional limitations.

It is established, in principle at least, that restrictions on the use of lands for residence purposes only carry with them, as a matter of law, the right to certain accessory uses customarily incident to the principal use.

1 Yokley, Zoning Law and Practice (3 Ed.) 183, Section 4-26, states this rule as follows:

" * * * districts, as defined in a comprehensive zoning ordinance, cannot be confined exclusively to the principal uses authorized therein. Incidental uses have always been authorized where they are customary and do no violence to the plain intent of the statute or ordinance. * * *''

Again, in 1 Rathkopf, The Law of Zoning and Planning (3 Ed.) 23-3, Chapter 23, the rule is stated:

"The term 'accessory uses' as used by the courts may be predicated upon a specific provision relating to accessory uses found in the ordinance, or may be based upon the concept that whether or not the ordinance provides for accessory uses, the litigated use is the one so customarily incidental to the principal use of the zoning [zoned] lot that it is, as a mater of law, a part of the permitted use.''

Under the zoning regulations before us, it is obvious that an "airstrip, airfield or landing strip" to be used in the operation of the private airplane of the property owners, and the planes of their guests, is not specifically permitted and is, therefore, prohibited, unless such a use of the land may be classified as a use *customarily incident* to a family dwelling house. As the regulation is drawn, as heretofore stated, only those things are permitted in the residence district for which provision is made, which nec-

essarily means that any use not specifically permitted, or which is not customarily incident to a residence use, is excluded.

We now direct our inquiry to the question of whether this contemplated private airport will be, if allowed, a use customarily incident to a single family dwelling. If it is, it may be built and used; and injunction does not lie.

In January 1966, the Hecks (appellees) acquired title to about twelve acres of land in Northampton Township, which was then subject to the zoning regulations; it fronts on a highway and is approximately 180 feet wide and 2,800 feet deep. Soon after purchase, they commenced the remodeling of an old farm house on the property, and the clearing and leveling of an area for an airstrip to be 90-100 feet in width and 2,200 feet in length; apparently sufficient in size for the use of small planes and for the particular type of aircraft owned and operated by Mr. Heck.

In the immediate vicinity of the Heck property, there are several small homes; one is directly across the roadway; about 350 yards northerly are the Northampton Township Hall, a Methodist Church, and a township elementary school; at a distance of 300 yards to the southeast are three housing developments, with homes built thereon; some on one-half acre sites; about one mile to the southeast is situated 520 acres of land acquired, and now being developed, by the Musical Arts Association for the express purpose of being used by the Cleveland Orchestra as a site for its summer festival. At an approximate cost of four million dollars, there will be erected there a pavilion, with accessories to seat approximately 4,500 people; and with additional arrangements on the surrounding improvements to accommodate 5,500 additional persons in attendance for summer concerts and various other cultural activities.

This site for the Cleveland Orchestra's program was chosen by the officials of the Musical Arts Association because lack of noise, and, particularly, airplane and trucking noise, made it more adaptable for its purposes than other sites which had been examined. The Court of Com-

mon Pleas found, and this court agrees, that "a private airplane, of the type owned by the defendants, flying in the vicinity of the Orchestra's land, would create noise which could be heard by the musicians performing, and by the audience attending * * *. This noise would be distracting both to the musicians and to the audience."

In August of 1965, the appellant Ronald Heck, a resident of Cuyahoga Falls, Ohio, purchased an airplane and commenced taking instructions in flying; he then looked for property which could be used for the housing and operation of his plane. The Northampton Township property was soon thereafter purchased because, in his estimation, it was suitable for his purposes. A part of his testimony is as follows:

"Q. * * * you looked for a piece of property upon which you could build an airport? A. That's right.

"Q. In other words, that was one of the prime reasons you purchased this property in Northampton Township? A. That's right.

"Q. So you could construct an airport on that land? A. A landing strip, yes, sir.

"* * * *

"The Court: When you bought the property, did you intend to build an airstrip? The witness: Yes, sir.

"Q. And that was the one reason you bought the land, isn't that right, Mr. Heck? A. Yes, sir."

It is argued that these facts alone are sufficient for a finding that the principal use of the property was for an airport, and that a single family dwelling was to be nothing more than a subordinate use. We see no purpose in pursuing this claim of counsel, for the reason that a decision in this case should be predicated upon the basic question stated above—is the proposed use for an airport customarily incident to a single family dwelling.

We find, from the evidence, that there are neither airports nor airplanes maintained or kept in the entire township; one privately owned commercial airport operates in Springfield Township, which was constructed and used prior to zoning; and two other private airports exist elsewhere in the county, with no definite evidence showing

when they were first used. In the entire state, there are 219 public commercial airports regularly inspected by the Ohio Division of Aviation, and there are 173 private airports which are neither licensed nor inspected by the Ohio Division of Aviation. Among the latter 173 private airports in the state, there are approximately 100 so-called private airports maintained by persons who live on the premises on which the airport is located.

The evidence further indicates that an airport of the kind contemplated would not be regulated by, or subject to, the jurisdiction or control of the Ohio Division of Aviation; by the Civil Aeronautics Board; or by the Federal Aviation Agency; excepting only that the Federal Aviation Agency (F. A. A.) would establish a traffic pattern by requiring an aircraft in approaching or leaving the airport to turn to the left, unless obstacles interfered, and a required compliance with the federal statutes regulating the minimum altitude for air flight, excepting landing or taking off.

Directing inquiry as to the meaning of the words customarily incident as they are used in the legislation, we find the word "customary" is defined in Webster's Third International Dictionary as: "agreeing with custom: established by custom: commonly practiced, used or observed: * * *." In Webster's Collegiate Dictionary, fifth edition, the definition is: "agreeing with, or established by custom; established by common usage; * * *."

The word "incident," when used in connection with the use of property, is generally said to mean anything which is usually connected with the principal use, something which is necessary, appertaining to, or depending upon, the principal use.

The record here clearly precludes this court from finding that the storage of an airplane, and the creation of an airport for flying in and out of the zoned property, constitutes a use of the property customarily incident to a single family residential use, or a use so necessary or commonly to be expected that it cannot be thought that the zoning resolution was intended to prevent it. In so finding, we are not saying that the allowance of a primary use (a

family dwelling) does not generally authorize all uses normally accessory, auxiliary, or incidental to the principal use. We do say, however, that the use here in controversy is not a use customarily incident to the principal use of the property, at least in this year of 1967.

We have found no cases in this state resolving the questions here presented. The Supreme Judicial Court of Massachusetts, however, has, in *Building Inspector of Falmouth* v. *Gingrass* (1959), 338 Mass. 274, 154 N. E. 2d 896, entered a judgment on similar facts in harmony with the judgment to be entered here. In that court's opinion, at page 276, may be found the following language:

"There is no implication in the by-law that the storage of a plane will be permitted as an accessory use in the single residence district. * * * There was no finding that any planes were customarily kept on residential lots in Falmouth or in Massachusetts. The findings as to increased use of planes do not furnish any basis for a conclusion that a hangar is, impliedly, an accessory building. * * *

"* * * Even when maintenance of private airplanes has become a common and usual occurrence in Massachusetts it will by no means necessarily follow that reasonable classification will require that each owner be allowed to keep his plane on his own land. Perhaps the time will come when there will be force in the contention that it is unreasonable to bar an owner whose residential lot, ample in size, adjoins a landing field or water surface, which the owner may lawfully use for ascent or descent, from storing his plane on his own property. We intend no suggestion. * * *"

The case of *Yorkavitz* v. *Board of Township Trustees of Columbia Township*, 166 Ohio St. 349, is claimed by the land owners as authority for their claimed right to the uses which they seek. The pertinent paragraph of the court's syllabus in that case reads:

"2. Where the General Assembly delegates to township trustees police power to adopt zoning regulations for the unincorporated territory in their respective townships, and where the General Assembly, by the enactment of general laws prior to such delegation, declares a policy of

promoting aviation and the establishment of airports, it is outside such police power delegated to the township trustees to enact zoning regulations prohibiting airports throughout the unincorporated territory of their respective townships by declaring that airports are nuisances per se, and such regulations are invalid.''

That pronouncement of the law of the case by the Supreme Court of Ohio is far removed from a declaration that the maintenance of a private airport is an accessory use to property legally zoned for family dwellings and that a ruling to the contrary fails to comply with constitutional limitations. The case at bar is wholly distinguishable from *Yorkavitz* v. *Board of Township Trustees of Columbia Township*, 166 Ohio St. 349; as, indeed, it is from other cited cases, including this court's decision in *Antonik* v. *Chamberlain*, 81 Ohio App. 465.

A decree granting the injunction will be entered for the plaintiffs, appellants herein.

*Judgment for appellants.*

BRENNEMAN, P. J., and HUNSICKER, J., concur.