Joseph A. Suozzi, J.
This article 78 proceeding, commenced by a property owner and resident of the Village of Valley Stream and the Valley Stream Council of Parent Teachers Associations, seeks a judgment annulling the building permit granted by the Village Board of Trustees of the Village of Valley Stream on November 17, 1972 to the owners of the building leased by Alexander’s Department Store for the construction of a rooftop helipad for the takeoff and landing of a helicopter owned by Alexander’s and used solely by their executives.
The proposed structure is intended to replace an existing rooftop pad which has been in use since December, 1968, following approval of airspace by the Federal Aviation Administration, Although no express authorization for this use was ever given by the Village Board of Trustees, the board has known of the continuous use of this rooftop pad since 1968. ,This pad has been used to ferry Alexander’s executives by helicopter from one store to another throughout the metropolitan area, and the number of flights from this location have not exceeded 66 since December, 1968.
Petitioners contend that, because of the fact that there are numerous houses and other buildings in the immediate vicinity of the subject premises, the landing and taking off of helicopters on and from the subject premises constitute a danger to the numerous persons in the vicinity and the homes in the area, as well as the travelers on Sunrise Highway.
The building permit which the petitioners seek to invalidate was approved by the Board of Trustees on the basis that the proposed helipad was an accessory use to the retail store.
“Accessory use” is defined as follows in the Valley Stream zoning regulations (§ 99-3 — Use, Accessory):
11 A. A use conducted on the same lot as the principal use to which it is related * * * and
“ B. A use which is clearly incidental to and is customarily found in connection with such principal use.”
The zoning regulations do not include any reference to helipads in the specified uses permitted in the C-2 District, general commercial, in which Alexander’s is located, or in the specified uses permitted anywhere within the village. However, permitted uses in each district are deemed to include “ uses and buildings therefor that are customarily accessory to and inci *52 dental to such permitted uses and located on the same lot therewith.” (Zoning Regulations, § 99-43A [1]).
The question presented is one of interpretation of the ordinance, i.e., does the principal use of a retail establishment such as Alexander’s, in a general commercial district, as a matter of custom carry with it a helipad as an incidental úse, so that as a matter of law it can be deemed that the legislative intent was to include it as a permitted accessory use. In considering this legislative intent, it becomes necessary to determine whether the use was customary as of the time the regulations wei^s adopted, or whether such use has become customary since their enactment. (See People v. Nicosia, 42 Misc 2d 300; 1 Rathkopf, Law of Zoning and Planning, p. 23-24.)
The two sections of the Valley Stream regulations dealing with accessory uses are part of the 1952 enactment. At that point in time the utilization of helicopters as a means of transportation had not advanced to such a stage that anyone can now reasonably claim, in retrospect, that the use of helicopters and facilities for their landing and takeoff was “ clearly incidental to and customarily found in connection with ” even the largest retail or commercial establishment, or the private residences of those who could afford this specialized means of transportation. Clearly, then, it cannot be held that a helipad was encompassed within the definition of an accessory use at the time that the regulations were adopted. The court must therefore consider whether in the intervening years since 1952 the use has become one which is clearly incidental to and customarily found in connection with a retail operation such as Alexander’s.
A search of the New York authorities fails to disclose any case which had dealt directly with the question of whether a helipad is or is not a permitted accessory use as that phrase is usually defined in zoning ordinances. The only reference to the operation of a helicopter as an accessory use in this jurisdiction is found in Rathkopf (Law of Zoning and Planning, supp. to vol. 1, p. 23-32) where it is suggested that an inference can be drawn from the language of the Court of Appeals in Thomson Ind. v. Incorporated Vil. of Port Washington North (27 N Y 2d 537, 539) that the operation of a helicopter is a valid and accessory use to the operation of a manufacturing plant in an industrial district. Inasmuch as that case dealt with a zoning ordinance which prohibited heliports, and the Court of Appeals decided the matter primarily on the basis of the General Business Law, the inference referred to by Rathkopf, even if it can validly be made, is not controlling here. Therefore, unbridled, *53 by stare decisis, this court can approach the determination of the issue presented herein as one of first impression in this jurisdiction.
The court’s attention has been called to a New Jersey case which does deal directly with a landing and takeoff pad as a permitted accessory use. In Doublis v. Garden State Farms (Super. Ct., Hudson County, Nov. 22, 1972), the court deemed a landing pad a permitted accessory use to a dairy products business on a large tract of land located in an industrial zone. The zoning ordinance involved therein defined an “ accessory use ” in substantially the same terms as the Valley Stream ordinance. In its decision the court did not discuss the relationship between the principal use and the landing pad which formed the basis for including it as an accessory use, but rather relied entirely on the authority of a New Jersey appellate court decision in Schantz v. Rachlin (101 N. J. Super. 334).
The Schants case involved the maintenance of an unlighted turf airstrip on a farm of about 135 acres, of which 100 acres were cultivated and the remainder used for livestock, a house and outbuildings. The airstrip was intended solely for daytime use and had been licensed for such use by the New Jersey Department of Aeronautics and stated by that department to be safe. The New Jersey appellate court based its holding on the lower court opinion, and ruled that the airstrip was a valid accessory use to the primary residential and agricultural uses. The lower court asserted as a basis for its conclusion that the installation of a landing strip for an airplane in connection with the defendant’s residence is no less accessory to its primary use than the installation of a 60-foot tower support for a radio antenna (citing Wright v. Vogt, 7 N. J. 1). This analogy does not persuade this court that a similar conclusion is mandated here. The Schants opinion concluded (p. 342): “ but there is sufficient use of such aircraft in our area so that it can be said that the installation of a landing strip for personal use is accessory to the use of property as a residence. It does not change the primary use of the premises from residential. ’ ’
Apart from the fact that this court is not bound by the holdings of its neighbor State, there is another significant difference between the case at bar and the two New Jersey cases. The New Jersey cases involved large tracts of land in farming and industrial areas. The helipad here is proposed for a limited roof area, in the midst of a large shopping center which attracts large crowds of shoppers and adjoins a much-traveled highway.
*54 In a Massachusetts case, Town of Harvard v. Maxant (275 N. E. 2d 347), the Supreme Judicial Court of Massachusetts held that an airplane strip in an agricultural-residential zone was not customarily incidental to its principal use. In so finding it specifically rejected the holding of Schantz v. Rachlin (supra), and followed instead the Ohio court, which in Samsa v. Heck (13 Ohio App. 2d 94) held that a private airport which landowners contemplated constructing on their property zoned for single and two-family dwelling was not permissible as a use “ customarily incident ” to the expressly permitted use.
After reaching its conclusion in the Town of Harvard case, the, Massachusetts court stated as follows (p. 352): “ Even if we take notice of the increasing use of private aircraft as a means of business travel and transportation and for pleasure purposes, such use has not become so prevalent in Massachusetts that it can now be held that it is one ‘ customarily incidental ’ to the residential use of property. See Building Inspector of Falmouth v. Gringrass, 338 Mass. 274, 276, 154 N. E. 2d 896.”
It cannot be disputed that the use of helicopters in this area has increased in the past 20 years; that helicopters are being used for the convenient and expeditious movement of corporate executives ; that the efficient supervision and management of business establishments with divisions or branches at widely dispersed locations may be enhanced by the swift shuttling between places that is possible with helicopters; and that modern merchandising methods can be assisted and the movement of merchandise can be facilitated by this mode of transportation. However, after taking notice of the increased use of helicopters in this area, this court cannot hold as a matter of law that the use hás become so clearly incidental to and customarily -found in connection with any principal use as to entitle it to be clothed with the permissive mantle of an accessory use.
In Town of Harvard v. Maxant (supra, p. 351) the court quotes a discussion which is contained in the case of Lawrence v. Zoning Bd. of Appeals of Town of North Branford (158 Conn. 509, 512-513) of the meaning of the words “ customarily incidental ” as they relate to accessory uses. This court deems this discussion pertinent and relevant to the issues presented here, and accordingly likewise sets forth this discussion:
‘ ‘ The word ‘ incidental ’ as employed in a definition of ‘ accessory use ’ incorporates two concepts. It means that the use must not be the primary use of the property but rather one which is subordinate and minor in significance. * * * But ‘ incidental, ’ when used to define an accessory use, must also *55 incorporate the concept of reasonable relationship with the primary nse. It is not enough that the use be subordinate; it must also be attendant or concomitant. To ignore this latter aspect of ‘ incidental ’ would be to permit any use which is not primary, no matter how unrelated it is to the primary use.
‘ ‘ The word ‘ customarily ’ is even more difficult to apply. Although it is used in this and many other ordinances as a modifier of ‘ incidental, ’ it should be applied as a separate and distinct test. Courts have often held that the use of the word ‘ customarily ’ places a duty on the board or court to determine whether it is usual to maintain the use in question in connection with the primary use of the land. * * * In examining the use in question, it is not enough to determine that it is incidental in the two meanings of that word as discussed above. The use must be further scrutinized to determine whether it has commonly, habitually and by long practice been established as reasonably associated with the primary use. * * *
“ In applying the test of custom, we feel that some of the factors which should be taken into consideration are the size of the lot in question, the nature of1 the primary use, the use made of the adjacent lots by neighbors and the economic structure of the area. As for the actual incidence of similar uses on other properties, geographical differences .should be taken into account, and the use should be more than unique or rare, even though it is not necessarily found on a majority of similarly situated properties. ’ ’
Considering the proposed helipad against this discussion, the shuttling of corporate executives for which it is intended, does bear some relationship to the business of Alexander’s in that it would provide a convenient and time-saving method of transportation between the branches of this chain of stores. However, the proposed use does not meet the test of the word “ customarily ”. Although Alexander’s has been utilizing a pad for this purpose since 1968 and a total of 66 flights have been made in this four-year period, averaging less than 17 per year, the court finds that this use hardly measures up to the test of having ‘1 commonly, habitually and by long practice been established as reasonably associated with the primary use ’ ’ of the premises as a retail store. This four-year use must also be evaluated in the light of the fact that it has not been affirmatively authorized by the village officials. Moreover, when considered in the light of the size of the lot in question, the nature of the primary use, the use made of the adjacent lots and the uniqueness of the use in this area, the proposed use does not *56 meet any of the standards of the test of custom as set forth in the language quoted above.
This court holds as a matter of law that the proposed pad for the occasional flights of Alexander’s corporate executives is not an accessory use within the purview of the Valley Stream zoning regulations, whether that definition is construed as of the time of the enactment of the regulations or as of the present.
In so holding this court believes it appropriate to raise the question of whether a use such as a helipad should ever be permitted as an accessory use unless such use is specifically included in the zoning regulations.
In considering any part of a zoning ordinance and the leg* islative intent underlying it, the ordinance must be considered as a whole as well. An examination of the zoning regulations of the Village of Valley Stream reveals that they make specific provision for such commonplace accessory uses as off-street parking spaces in all zoning districts; private garages, swimming pools, tool sheds, fallout shelters and playhouses in residential districts; and have expressly excluded automobile wrecking and junk yards as accessory uses in any district. Many zoning regulations follow this format in substance. This court finds it extremely difficult to logically and reasonably infer that legislators who had given such specific attention to such commonplace accessory uses intended to encompass a helipad within the definition of accessory uses.
This court suggests that the authorization of such uses as helipads under the guise of their being an accessory use is an unwarranted application of the accessory use device. In Bassett, Zoning (Russell Sage Foundation, 1936, p. 100), the basis for the custom of permitting accessory uses is explained as follows: “ During the formative period of comprehensive zoning it became evident that districts could not be confined to principal uses only. It had always been customary for occupants of homes to carry on gainful employment as something accessory and incidental to the residence use * * * The earliest zoning ordinances took communities as they existed and did not try to prevent customary practices that met with no objection from the community.”
The extension of the accessory use definition to such uses as helipads does not reflect a sound, realistic or reasonable construction of the legislative intent of those who enacted such regulations. Any land use which involves the -operation of aircraft such as a helicopter bears heavily upon a community’s health, safety and welfare. The introduction of such a facility into a *57 community is accompanied with, serious implications which mandate more direct regulation and control than the “ accessory use ” approach permits. Judicial approval of such an approach is a form of “ zoning leniency ” which should not be encouraged.
Assuming arguendo that the proposed helipad were a permitted accessory use, the permit herein challenged must be invalidated in any event. The Village Board was without authority to grant it or authorize it as an accessory use or a special permit. An examination of the return filed by the respondent village discloses the following events in connection with this application:
An application for a heliport dated November 17, 1970 was filed with the Village Building Inspector. By a letter dated November 18, 1970, addressed to the applicant, as well as by a memo to the Superintendent of Public Works dated September 7,1971, the Building Inspector noted that the zoning regulations do not permit such a use, and that the application should be submitted to the Board of Trustees for a special permit.
Subsequently, by resolution dated January 17, 1972, the Village Board denied the application, citing the following objections:
“ 1. Insufficiency of submitted application.
‘1 2. Hazard to the public (using this area in large numbers).
“ 3. Already burdened air space over the Village, especially in foul weather when the glide path for planes landing at J. F. Kennedy International Airport.
“4. Danger of collision with large structure in the area or with other aircraft thus causing peril to dense population of the area.
‘ ‘ 5. Discomfort of additional noise for homes located in the immediate vicinity.”
The original application was subsequently amended by a letter dated September 7, 1972, from an attorney for Alexander’s, to limit it as follows: ‘ ‘ The installation of a private executive helipad as an accessory use to its retail store, the use of which shall be limited to accommodate eight (8) Alexander Executives.” By resolution dated November 16, 1972, the Village Board authorized the “ Superintendent of Public Works to grant the permit, if required, permitting a helipad as an accessory use to Alexander’s, Valley Stream.”
It is a well-established building and zoning law procedure that upon the refusal of a permit by a building official, the proper procedure is to appeal that decision to the Board of Appeals, whose determination may thereafter be reviewed in an article 78 proceeding. Notwithstanding that the zoning regulations contain no provision for granting a special permit for a heli, *58 pad or heliport by the Village Board, the Building Inspector in denying the permit on the grounds that the regulations did not permit such a use, referred the applicant to the Village Board for a special permit. The Village Board, after having first denied the original application and citing several serious objections, subsequently granted it in its amended form.
Among the powers entrusted to a Village Board is the power to rezone property and to amend the zoning regulations, after appropriate and mandated public notices and hearings. Property cannot be rezoned or zoning regulations amended without following a prescribed procedure. Most zoning regulations provide, as do Valley Stream’s, for the delegation to a building official of the power to grant or deny permits, subject to review by the Board of Appeals after public notices and hearings, and subject to further review by a court by an appropriate procedure. Implicit in this delegation is the power to interpret the ordinance. No power of interpretation is vested in the Village Board. However, a Village Board may request an interpretation from the Board of Appeals. While a Village Board may express its own legislative intent by the granting or denial of a rezoning, or by amending the zoning regulations, it is not empowered to engage in quasi-judicial interpretation of the intent of other legislators who enacted the regulations as they exist at a particular moment.
By approving the permit, the Village Board has in effect (1) usurped the power of the building official by extending the definition nf “ accessory use ” to the proposed helipad; and (2) bypassed the safeguards of review by a Board of Appeals, thus engaging in “ back-door rezoning ” without the benefit or safeguard of the required public notice and hearings.
Aside from the lack of any authority to grant the permit, the Village Board has, by devising a special procedure for this application, actually avoided a direct confrontation with the problem of regulating land uses as to such facilities. At the same time the board has, without explanation and without any apparent change of circumstances, completely disregarded the serious and valid objections raised when the application was initially denied. It is the operation of a helicopter that poses the hazard to safety, not the purpose for which the aircraft is operated. The hazard to safety exists whether the helicopter is taking off and landing from a heliport, as Alexander’s originally proposed, or from a helipad for the shuttling of corporate executives.
By their action the Village Board has obviously neglected to consider the consequences and implication of its action if this *59 permit is validated by this court. If a helipad is to be permitted as an accessory use for Alexander’s, what is to prevent the installation of a similar facility, on the basis of such interpretation, at every major department store or any other commercial or industrial establishment, or at every residence whose owner could afford it, for any of the purposes for which this mode of transportation may be utilized? Moreover, by giving judicial sanction to a permit for a helipad as an accessory use, a municipality would in effect be permitted to abdicate its authority with respect to the regulation of these facilities as they relate to the use of land within a community, and by implication a local community’s police powers in this regard would be pre-empted. It is readily apparent that the consequences of utilizing this approach for the introduction of helipads into a community are far more serious and far-reaching than the use of this approach reflects.
A further question must also be considered: Do the provisions of article 14 of the General Business Law, requiring village approval and hearing and determination by the State Commissioner of Transportation, apply to this limited-use helipad? Federal Aviation Administration approval was obtained in 1968. At that time section 240 of1 the General Business Law, a definitional section, provided:
“ 4. ‘ Landing area ’ means any locality either of land or water, including airports and intermediate landing fields, which is used or intended to be used for the landing and take-off of aircraft, whether or not facilities are provided for shelter, servicing or repair of aircraft or for receiving or discharging passengers or cargo.
“ 5. ‘ Airport ’ means any landing area used regularly by aircraft for receiving or discharging passengers or cargo; or for the landing and take-off of aircraft being used for personal or training purposes. * * *
“11. ‘ Helicopter ’ means an aircraft, the support of which in the air is normally derived from airfoils mechanically rotated about an approximately vertical axis.”
Section 249 (subd. 1, par. [a]) of1 the General Business Law, in 1968, forbade the establishment of a privately owned airport except by authorization of the governing body of the village within which such airport was proposed to be established. Airports established prior to April 12, 1947, the effective date of this section, were excepted from this requirement.
, In Thomson Ind. v. Incorporated Vil. of Port Washington North (27 N Y 2d 537, 539 [1970], supra), the Court of Appeals *60 held that a helipad used occasionally for the landing and takeoff of a business-owned helicopter, for purely business-connected use, operating with FAA approval, in effect since 1964, “ comes within the definitions contained in section 240 of the General Business Law (subd. 4) and the requirements of section 249 of that statute * * * must be met.”
The Village Board of Trustees’ authorization required by section 249 of the statute has not been sought by Alexander’s, and therefore never was granted. The inaction of the Village Board cannot be equated with approval, given the strong legislative policy in favor of regulation where public safety is involved. Illegal from its inception, the. helipad can now be established, zoning considerations apart, only in accordance with the requirements of section 249 of the General Business Law, as amended in 1969, which require hearing and determination by the State Commissioner of Transportation prior to obtaining the Village Board of Trustees’ authorization. (See Thomson Ind. v. Incorporated Vil. of Port Washington North, supra.)
This court does not intend to convey the impression that helipads should be foreclosed for business, industrial or private use in the Village of Valley Stream or elsewhere. Quite the contrary, the court recognizes that there is a demand for facilities for the taking off and landing of helicopters which should be met as expeditiously as possible, by reasonable and appropriate regulations.
The village has had knowledge of the existence of a helipad at Alexander’s for some four years, and has had more than ample opportunity within which to deal with this problem in a direct manner by an amendment, after required public hearings, to the zoning regulations. The difficulties presented in the formulation of appropriate regulations neither warrant nor excuse the utilization of the “ accessory use ” device to permit the proposed facility. If the Village Board is in favor of a helipad at Alexander’s, as it presumably is, they have the legislative power to permit the same by amending the zoning regulations to include a helipad as a special use or an accessory use, or even as a primary use. All that this court suggests is that the village act in accordance with established procedure, and not improvise for a particular use.
Accordingly, for all of the reasons set forth hereinabove, the court holds that the building permit granted by the Village Board of Trustees of the Village of Valley Stream on November 17, 1972, to S & E Realty Co. for the construction of a rooftop helipad at Alexander’s department store is illegal and must be annulled.