RICHARD KOWALSKI *v.* JOHN LAMAR ET AL.

[No. 587, September Term, 1974.]

*Decided April 4, 1975.*

The cause was argued before ORTH, C. J., and DAVIDSON and MELVIN, JJ.

*Michael E. Marr*, with whom were *Sutley & Marr* on the brief, for appellant.

*Ronald J. Kearns* for appellees.

DAVIDSON, J., delivered the opinion of the Court.

On 7 March 1971 Richard Kowalski, the appellant, filed a complaint with the Department of Permits and Licenses of Baltimore County, alleging that John Lamar, the appellee,[1] was violating the Baltimore County Zoning Regulations[2] (zoning regulations) by operating a commercial fishing business in a residential zone. On 14 February 1972 the appellant filed a second complaint with the Zoning Commissioner (Commissioner) alleging that the appellee was violating the zoning regulations by operating a boat yard in a residential zone. After hearings, the Commissioner found that the appellee was violating the zoning regulations by operating a boat yard and by conducting a commercial business upon land classified in a residential zone. He ordered that such uses cease. The County Board of Appeals for Baltimore County (Board) reversed, and, on appeal to the Circuit Court for Baltimore County, Judge H. Kemp MacDaniel on 11 July 1974 entered an order affirming the Board. This appeal is taken from that order.

Most of the facts are not in dispute. For approximately 30 years the appellee has owned three lots designated on a plat of Bengies Farm Beach (see plat attached hereto) as lots 12, 13 and 16. The appellee's year-round single family home is located on lot 16, which fronts on Saltpeter Creek. A pier is

---

1. The Baltimore County Board of Appeals is also an appellee.
2. Baltimore County Zoning Regulations (Interim Ed. 1971).

located on this lot which extends into the navigable waters of the creek.

Lots 12 and 13, which front on Muddy Gut, are undeveloped except for a pier located on lot 13 which extends into navigable waters. In 1971 this pier was improved and extended to a length of 90 feet. There are no other buildings or structures on these lots, nor are any water or sewer facilities or any electrical connections available.

In 1954 the appellant purchased lots 14 and 15 which front on both Muddy Gut and Saltpeter Creek and which are bounded on the east by the appellee's home and on the south by appellee's vacant lots. The single family residence located on these lots is owned by the appellant and is occupied by him and his wife on a year-round basis. All of the property owned by the parties is classified in the R.D.P. zone (rural, deferred-planning) and lies in an area devoted exclusively to R.D.P. zoning and uses.

There was uncontradicted and unrefuted evidence to show that within the last two years the pier extending from lot 13 into Muddy Gut has been used extensively for fishing activities. On various occasions as many as nine boats have been moored at the pier or stored on the lots. These boats, of varying sizes, are open and equipped with outboard motors. They belong to the appellee's son and two cousins of the appellee's wife. A large number of rolled up gill and fyke nets, seines, boxes, which were utilized to lift the nets full of fish from the water onto the pier, and wooden crates used to package the fish, are stored on the pier. Several truckloads of crushed gravel have been deposited on the lots in order to provide a driveway for the trucks upon which the crated fish are loaded and hauled to the market. At various times as many as six trucks have been parked upon this driveway.

The appellee himself is a plumber who is not engaged in any way in the fishing activities. He has not authorized and does not permit the general public to use the pier extending from lot 13. While he has never leased the pier to anybody, he has given permission to use the pier to his 20 year-old son, Mr. Thomas R. Lamar, and two of his wife's cousins,

Mr. Arnold Clifton Maddox and his son, Mr. William E. Maddox. The appellee obtains no profit or any other return from the use which he has authorized.

Thomas Lamar, who is employed full-time at a hardware company, possesses a "fyke and gill net license." Arnold Clifton Maddox, who is employed full-time as a longshoreman, has had a commercial fishing license for 18 years. William Maddox also has a commercial fishing license. During January, February and March, at various times when they were not working, such as evenings, Saturdays and Sundays, and depending upon weather and tides, the three men would set out, each in his own boat, often accompanied by a helper, to fish. Upon their return the fish would be hoisted onto the pier, packed into crates, loaded onto trucks and hauled away to the wholesale fish market where they were sold. But for the fact that a sufficient quantity of fish were caught to be sold, the fishing expeditions would not take place. There were no sales of fish conducted on the property nor were there any signs indicating the existence of any business operation on the property.

Section 102.1 of the zoning regulations provides, insofar as here relevant:

> "No land shall be used or occupied and no build-ing or structure shall be erected, altered, lo-cated, or used *except in conformity with these regulations. . . ." (Emphasis added.)*

Section 1A00.2 of the zoning regulations provides:

> "A. Uses Permitted as of Right. *The following uses, only, are permitted as of right in R.D.P. zones:*

> "1. Farms. . .

> "2. One-family detached dwellings.

> "3. Churches or other buildings for religious worship.

> "4. Trailers. . .

> "5. Research institutes. . .

"6. Hospitals.

"7. Telephone, telegraph, electrical-power, or other electrical lines. . .

"8. Other cables; conduits; gas, water, or sewer mains; or stormdrain systems. . .

"9. Railroads or other transportation lines.

"10. Animal boarding places (regardless of class), kennels, veterinarians' offices or veterinariums. . .

"11. Excavations, uncontrolled.

"12. Schools . . .

"13. Accessory uses or buildings (not subject to the provisions of Section 400), including, but not limited to:

"a. An office or studio of a doctor, dentist, lawyer, architect, engineer, artist, musician, or other professional person, provided that such office or studio is established within the same building as that serving as his bona fide residence . . .

"b. Home occupations as defined in Section 101, also subject to the sign provisions of Section 413.

"c. Parking space, including residential-garage space.

"B. Uses Permitted by Special Exception. *The following uses, only, are permitted as special exceptions:*

"1. Airports.

"2. Antique shops . . .

"3. Boat yards.

"4. Cemeteries.

"5. Commercial beaches.

"6. Community buildings, swimming pools, or other structural or land uses devoted to

civic, social, recreational, or educational activities.

"7. Conservatories for music or other arts.

"8. Dwellings or other buildings converted to tea rooms or restaurants . . .

"9. Excavations, controlled . . .

"10. Golf courses, country clubs, or other outdoor recreation clubs; also quasi-public camps, including day camps.

"11. Golf driving ranges, miniature-golf ranges, or baseball-batting ranges.

"12. Helistops.

"13. Marinas.

"14. Public-utility uses not permitted as of right.

"15. Residential art salons . . .

"16. Riding stables . . .

"17. Sanitary landfills . . .

"18. Shooting ranges.

"19. Volunteer-fire-company facilities.

"20. Wireless transmitting and receiving structures . . .

"21. Large-scale unit developments, as provided in Section 430."

These sections established that the only uses permitted in the R.D.P. zone are those designated as uses permitted as of right and uses permitted by special exception. Any use other than those permitted and being carried on as of right or by special exception is prohibited. *See Town of Harvard v. Maxant*, 275 N.E.2d 347, 349-50 (Mass. 1971); *Williams v. City of Bloomington, McLean County*, 247 N.E.2d 446, 449-50 (Ill. App. 1969); *Samsa v. Heck*, 234 N.E.2d 312, 315-16 (Ohio App. 1967); *Gada v. Zoning Board of Appeals of the Town of East Lyme*, 193 A. 2d 502, 503 (Conn. 1963); *Gordon v. Zoning Board of the City of Stamford*, 145 A. 2d 746, 750 (Conn. 1958); *Silver v. Zoning Board of Adjustment*, 112 A.

2d 84, 86-87 (Penn. 1955); *City of Warwick v. Campbell*, 107 A. 2d 334, 336-37 (R.I. 1954); *City of Knoxville v. Brown*, 260 S.W.2d 264, 267 (Tenn. 1953); *Dolan v. DeCapua*, 80 A. 2d 655, 659 (N.J. Super. 1951); *Jones v. Robertson*, 180 P. 2d 929, 931 (Cal. App. 1947). Thus, the question before the Board was whether the use of vacant land, by the owner's relatives, for the berthing, storage, maintenance and launching of boats, as well as for the fishing activities described above, to which uses the owner consented, was prohibited by section 1A00.2 of the zoning regulations, rather than whether the uses complained of were boat yard, marina or commercial uses. The Board found that the uses complained of constituted neither a marina nor a boat yard, nor a commercial business or trade use. The Board failed to determine whether the uses complained of were permitted in the R.D.P. zone and, therefore, were not prohibited, and, if so, whether they were being properly conducted as a matter of right or by special exception. In so doing the Board erred.

Here there is not an iota of evidence to show that the uses complained of do or can constitute any use permitted as of right other than an accessory use. Section 101 of the zoning regulations defines an accessory use or structure as follows:

> "A use or structure which — (a) is customarily incident and subordinate to and serves a principal use or structure; (b) is subordinate in area, extent, or purpose to the principal use or structure; (c) is located on the same lot as the principal use or structure served; and (d) contributes to the comfort, convenience, or necessity of occupants, business, or industry in the principal use or structure served. . . ."

A principal use is defined under this section to be a "main use of land, as distinguished from an accessory use."

The record here unequivocally establishes that the subject property is vacant, contains no buildings or structures, is not served by water or sewer facilities, and is not equipped with any electrical service. It has no use other than those authorized and permitted by the owner, all of which are

associated with the berthing, storage, maintenance and launching of boats, as well as the fishing activities previously described. Thus, the record establishes that at the present time the only uses of the subject property are the uses of which the appellant complains. Under these circumstances such uses constitute the main or principal uses of the subject property. They do not and cannot fall within the ambit of the definition of an accessory use.[3] *See Town of Harvard, supra; City of Bloomington, supra; Samsa, supra; Silver, supra; City of Warwick, supra.*

Moreover, there is not an iota of evidence to show that the uses complained of are being carried on pursuant to a special exception. Section 1A00.2B provides for a "boat yard" and a "marina" as permitted uses by special exception in the R.D.P. zone. Section 101 defines a "boat yard" as:

> "A commercial or *non-profit* boat basin with facilities for *one or more* of the following: sale, construction, repair, *storage, launching, berthing,* securing, fueling and *general servicing* of marine craft of all kinds." (Emphasis added.)

A "marina" is defined by section 101 as:

> "A modern boat basin, restricted to recreational marine craft of all types, with facilities for one or more of the following: berthing, launching, and securing such craft, and permitting incidental minimum provision for refueling and emergency servicing, and also land (out-of-water) storage as provided in subsection 417.7."

But even assuming without deciding, that some or all of the activities complained of, particularly those centering around the berthing, launching and maintenance of boats, are permitted uses by special exception, such uses under the

---

**3.** We are not here confronted with the question of what, if any, personal use an owner can make of a vacant parcel of R.D.P. zoned waterfront land.

circumstances here would still be prohibited by section 1A00.2 because a special exception had not been obtained.

In the absence of any evidence to support a finding that the uses complained of were permitted uses, being carried on as a matter of right or by way of special exception, the order of the trial court, affirming the decision of the Board, will be reversed.

*Order reversed.*
*Costs to be paid by appellees.*