971 A.2d 475 (2006)
407 N.J. Super. 446
Steven M. TANENBAUM and Deborah Del Nobile Tanenbaum, Plaintiffs,
v.
TOWNSHIP OF WALL BOARD OF ADJUSTMENT and Township of Wall Planning Board, and
Township of Wall, Defendants, and Defendant-Intervenor.
Docket No. L-1049-06
Superior Court of New Jersey, Law Division, Monmouth County.
Decided September 28, 2006.
*477 Dean A. Gaver, Douglas K. Wolfson, and Steven Firkser, Woodbridge, for plaintiffs (Greenbaum, Rowe, Smith & Davis, L.L.P., attorneys).
Michael R. Rubino, Jr., Spring Lake, for defendants Township of Wall Board of Adjustment and Township of Wall Planning Board (Pandolfe, Shaw & Rubino, L.L.C., attorneys).
Jeffrey R. Surenian, for defendant-intervenor (J.R. Surenian & Associates, L.L.C., attorneys).
LEHRER, P.J.Ch.

STATEMENT OF FACTS
Steven and Deborah Tanenbaum own 67,904 square feet of property known as Block 811.01, Lot 62, on the Wall Township tax map. The property fronts on Orchard Crest Boulevard and is part of a development known as "Orchard Crest."
Lot 62 was created from a tract of 171 ± acres formerly known as Block 811, Lots 23 and 24, owned by developer Lions Head Holding Corporation (Lions Head). This large tract was situated in the R-60 Zone and R-30 Zone. The R-60 Zone requires a minimum of 60,000 square feet per lot and the R-30 Zone requires 30,000 square feet.
Between 1986 and 1989, Lions Head was involved in Mount Laurel litigation with Wall Township regarding Orchard Crest. Lions Head sought a "builder's remedy" to construct more residential units than would otherwise be possible under the zoning requirements. The parties settled their dispute by consent orders entered by Judge Serpentelli, the then-Monmouth/Ocean County Mount Laurel judge. The settlement in part provided that the Wall Township Committee will adopt an amendment to its zoning ordinance so that the individual lots would not be less than 25,000 square feet. Wall Township's Planning Board was authorized, but not required, to approve the subdivision for Orchard Crest consisting of 206 lots. The consent order dated October 24, 1988 at ¶¶ a-e provided:
[Lions Head] shall submit an application for a 206 lot subdivision for the subject property which subdivision shall require certain variances ... [T]he Township, recognizing the independence of the Planning Board, shall encourage, but not direct the Planning Board to consider *478 and make a determination with respect to the requested variances.... In the event the Planning Board approves the application with fewer than 206 lots, Lions Head shall reduce its [voluntary Mount Laurel contribution] payment by $10,000 per unit for each unit less than 206 received.
The Planning Board approved the 206-lot subdivision pursuant to a resolution dated June 5, 1989. It is undisputed that all 206 of these Mount Laurel lots have been developed and 206 dwelling units constructed thereon. There is no evidence that anyone has ever sought any additional builder's remedy or other Mount Laurel relief against the Township with respect to Orchard Crest.
Plaintiffs purchased Lot 62 in 1994. Eleven years later, on or about March 9, 2005, they submitted an application to subdivide Lot 62 into two parcels, one proposed lot being 42,780 square feet, the other proposed lot being 25,111 square feet.
John Hoffmann, the Township's planner, certified plaintiffs' application as being complete and expressed his belief that plaintiffs were requesting minor subdivision approval, as did township engineer, Glenn R. Gerken.
On May 2, 2005, Hoffmann recognized he had made an error describing plaintiffs' application as a minor subdivision. He based his second opinion upon an analysis of Wall Township Ordinance 140-17, which defines a minor subdivision as:
a subdivision of land containing not more than one new lot, provided that such subdivision does not involve a planned development, any new street or the extension of any off-tract improvement.... A minor subdivision shall not adversely affect the development of the remainder of the parcel or adjoining properties and shall not be in conflict with any provision or portion of the Master Plan, the Official Map, or this chapter. A minor subdivision shall not involve property which was formerly part of a tract for which subdivision approval has been granted previously dividing the original tract into two or more lots, except that the latter provision may be waived by the Planning Board if it determines that the proposed subdivision will not be detrimental to the intent and purposes of [Chapter 140: Land Use and Development Regulations].
Due to the fact Lot 62 was part of the previous 206-lot subdivision, the application was considered a major subdivision under the Wall Township ordinances.
Orchard Crest was located in the ML-25 Zone, which was expressly created to resolve the builder's remedy litigation of 1988. This zone is governed by the provisions of Wall Ordinance 140-306 which provided: "The ML-25 Zoning District consists of [former] Block 811, Lots 23 and 24, known as Orchard Crest (Lions Head) for 206 units on 171.2 acres yielding a density of 1.2 dwelling units per acre."
It was further reasoned, since plaintiffs' proposed subdivision would establish a 207th lot on Orchard Crest, it would increase the density to 1.209 units per acre (207/171.2), which required variance relief for increased density pursuant to N.J.S.A. 40:55D-70(d)(5). Since this variance was needed, the Board of Adjustment alone had jurisdiction.
Hoffmann's May 2, 2005 letter explained:
As an addendum to my report of 4/21/05, please be advised that the above application represents an increase in density from the maximum permitted in the ML-25 zone district. The zone permits a density of 1.2 units per acre (upa). *479 The original approval for the Orchard Crest development provided a density of 1.203 upa and this subdivision would increase that density to 1.209 upa. As a result jurisdiction of the application, pursuant to NJSA [40]:55D-70(d), rests with the Board of Adjustment because a use variance is now required. The application should be transferred to that Board.
As a result of Hoffman's letter of May 2, 2005, the matter was transferred to the Board of Adjustment. The Board of Adjustment was to determine plaintiffs' application as a(d)(5) variance inasmuch as the density for the zone (1.2 units per acre) would be increased. There were several delays in the process. Most were a result of plaintiffs' actions. Finally, the Board of Adjustment held a hearing on October 19, 2005. On that date, the Board of Adjustment heard the application and concluded that plaintiffs' proposed subdivision would need bulk variance relief pursuant to N.J.S.A. 40:55D-70(c), as the minimum lot size of 60,000 square feet per lot of the R-60 Zone applied. The Board reasoned that the ML-25 Zone is governed by Ordinance 140-306B(1) (emphasis added), which states:
In the ML-25 Mount Laurel Compliance Zone, no premises shall be permitted and no structure shall be erected, altered or occupied, for any purpose except the following:

(1) Same as permitted in the Rural Residential Zone in conformance with the R-60 Residential Zoning District requirements.

Plaintiffs claimed that the proposed subdivision fell under Ordinance 140-306B(2) (emphasis added), which stated:

(2) Mount Laurel development shall be in conformance with the Schedule of Area, Yard and Building Requirements as follows:

(a) Minimum lot area [25,000 square feet]
The Board's planning expert, Cheryl Bergailo, testified that the plaintiffs were not engaged in Mount Laurel development; all 206 lots from the Lions Head builder-remedy settlement in 1989 had been constructed. Therefore, Wall Township's Mount Laurel obligation had been fulfilled. Bergailo opined any development above and beyond the 206-lot Mount Laurel development was governed by the R-60 zoning requirements contained in Wall Ordinance 140-306B(1), and she stated:
[I]f you were to develop a non-Mount Laurel development in this area, your uses would be those in the rural residential zone which is a full-fledged zone in the Township, and your bulk standards would be in conformance with the R-60 residential zoning district requirements.... So that's where somebody who had a non-Mount Laurel development in this area would turn to get their bulk requirements.
Plaintiffs' expert argued to the contrary and testified that plaintiffs should be allowed to subdivide pursuant to Wall Ordinance 140-306B(2), Mount Laurel development criteria, but admitted plaintiffs were not Mount Laurel developers.
As plaintiffs recognized that they were not Mount Laurel developers, and Wall Township's obligation for Mount Laurel development was satisfied by the 206 units, the Board concluded that a 207th lot must comply with the zoning requirements of R-60 per Wall Ordinance 140-306B(1), not the Mount Laurel development requirements of Wall Ordinance 140-306B(2). The Board ruled it had jurisdiction and would determine the application under the R-60 zoning requirements. Rather than seek variance relief, plaintiffs abandoned their application and it was dismissed.
*480 Plaintiffs bring this action against the Board of Adjustment and the Planning Board seeking approval of their proposed subdivision. The court permitted Wall Township to intervene.
Wall Township's current land use and development regulations were codified on December 15, 2003, and control the plaintiffs' application.
In making its decision, the Board of Adjustment reviewed Ordinance 140-306, which governs the ML-25 Mount Laurel Compliance Zone, where Orchard Crest and the subject lot are located. Ordinance 140-306B (emphasis added) states in relevant part:
In the ML-25 Mount Laurel Compliance Zone, no premises shall be permitted and no structure shall be erected, altered or occupied, for any purpose except the following:

(1) Same as permitted in the Rural Residential Zone in conformance with the R-60 Residential Zoning District requirements.

(2) Mount Laurel development shall be in conformance with the Schedule of Area, Yard and Building Requirements as follows:
(a) Minimum lot area [25,000 square feet]
The Board of Adjustment concluded that the application was not governed by Ordinance 140-306B(2), inasmuch as plaintiffs were not engaging in Mount Laurel development.
Ordinance 140-306A provides:
The ML-25 Zoning District consists of Block 811, Lots 23 and 24, known as "Orchard Crest (Lions Head)" for 206 units on 171.2 acres yielding a density of 1.2 dwelling units per acre.... Such Mount Laurel development is permitted by the Housing Plan Element of the Wall Township Master Plan as adopted August 1, 1988; the Consent Order Approving Settlement entered March 3, 1989; and the developer's agreement.
The restrictions and standards applicable to development in the Mount Laurel districts are the subject of court-approved settlements and the fair share housing plan of the Township. In Southern Burlington County N.A.A.C.P. v. Tp. of Mount Laurel, 67 N.J. 151, 336 A.2d 713, appeal dismissed and cert. denied, 423 U.S. 808, 96 S.Ct. 18, 46 L.Ed.2d 28 (1975) (Mount Laurel I), and Southern Burlington County N.A.A.C.P. v. Tp. of Mount Laurel, 92 N.J. 158, 456 A.2d 390 (1983) (Mount Laurel II), the New Jersey Supreme Court required municipal rezoning in order to create reasonable opportunities for affordable housing. The Lions Head builder's remedy (Mount Laurel II) suit resulted in the settlement for 206 units in Orchard Crest, representing Wall Township's fair share of affordable housing.
Plaintiffs concede they are not engaging in Mount Laurel development. Further, it is undisputed that Lions Head developed all of the 206 lots permitted under the Mount Laurel settlement, and as plaintiffs have never filed a Mount Laurel suit to develop a 207th lot, the court holds their application is not for Mount Laurel development; it is for a private subdivision governed by the requirements of the R-60 Zone. Ordinance 140-306 clearly distinguishes between Mount Laurel development occurring within the Mount Laurel zone, and any other development occurring within the zone.
Plaintiffs claim that applying Ordinance 140-306B(1) to their proposed subdivision violates the "uniformity" provision of N.J.S.A. 40:55D-62(a). In Rumson Estates, Inc. v. Mayor & Council, Borough of Fair Haven, 177 N.J. 338, 828 A.2d 317 (2003), the Court, in upholding a steep *481 slope ordinance and capping floor areas for single-family residences, emphasized that uniformity in N.J.S.A. 40:55D-62(a) does not require that ordinances apply equally to every property in the zone. The court stated:
Plaintiffs broadly misinterpret that uniformity principle to mean that there can be no differences in the regulation of property within a zone.... [N]early thirty-five years ago, in commenting on an identical uniformity provision in the prior zoning statute, this Court clearly established that uniformity "does not prohibit classifications within a district so long as they are reasonable."
. . . . .
In short, plaintiffs are wrong in their crabbed interpretation of N.J.S.A. 40:55D-62a. Uniformity is not absolute and rational regulations based on different conditions within a zone are permissible so long as similarly situated property is treated the same. Reasonableness is the key. "Constitutional uniformity and equality requires that classification be founded in real and not feigned differences having to do with the purpose for which the classes are formed."
[Rumson Estates, supra, 177 N.J. at 357-59, 828 A.2d 317 (internal citations omitted).]
Wall Ordinance 140-306B distinguishes between Mount Laurel development (306B(2)) and non-Mount Laurel development (306B(1)) in the ML-25 Zone. The Township's distinction is rational when one considers the relationship between zoning and planning under the Municipal Land Use Law ("MLUL") N.J.S.A. 40:55D-1 to -163, and Mount Laurel litigation for affordable housing opportunities.
Under the MLUL, a municipality's zoning ordinance is valid if it satisfies one or more of the MLUL purposes set forth in N.J.S.A. 40:55D-2. See, e.g., Cox, New Jersey Zoning & Land Use Administration, § 34.7 (GANN 2006). Bulk requirements under N.J.S.A. 40:55D-65(b) promote the general purposes of the MLUL set forth in N.J.S.A. 40:55D-2(b), (c) and (e). See Cox, supra, § 34-7.5.
In Mount Laurel litigation, valid MLUL zoning is changed by court order to provide a reasonable opportunity for affordable housing in the municipality. Courts may grant successful Mount Laurel developers density bonuses, mandatory set asides and builder's remedies, all elements of relief not permitted under the MLUL. See East/West Venture v. Borough of Fort Lee, 286 N.J.Super. 311, 669 A.2d 260 (App.Div.1996). If the proper procedures are followed, Mt. Laurel II consent judgments and consent orders validate what would otherwise be impermissible contract zoning. See Toll Bros., Inc. v. Tp. of West Windsor, 334 N.J.Super. 77, 756 A.2d 1056 (App.Div.2000), aff'd 173 N.J. 502, 803 A.2d 53 (2002). A developer has no inherent right to a builder's remedy. Allan-Deane Corp. v. Tp. of Bedminster, 205 N.J.Super. 87, 500 A.2d 49 (Law Div. 1985). Therefore, once the municipality meets its agreed-to Mount Laurel housing obligation, land use is no longer governed by Mount Laurel but by the MLUL. In Mount Olive Complex v. Township of Mount Olive, 340 N.J.Super. 511, 538, 774 A.2d 704 (App.Div.2001), the court stated:
When a municipality satisfies its fair share obligation, "the Mount Laurel doctrine will not restrict other measures, including large-lot and open area zoning, that would maintain its beauty and communal character." Mount Laurel II, supra, 92 N.J. at 220, 456 A.2d 390. A compliant municipality may implement large-lot zoning and also adopt regulations "with some regard to their fiscal *482 obligations" so long as those measures bear a reasonable relationship to a legitimate governmental objective.
[Id. at 540, 774 A.2d 704.]
Once the Mount Laurel obligation is satisfied, courts cannot order more Mount Laurel housing even if the municipality could have provided more. See Livingston Builders, Inc. v. Tp. of Livingston, 309 N.J.Super. 370, 707 A.2d 186 (App.Div.1998).
Here, the property was zoned R-60 prior to the Lions Head litigation. The Township established the zoning requirements (Ordinance 140-306B(2)), solely for the 206 units it was obligated to provide under Mount Laurel. Any development above and beyond the 206 Mount Laurel lots must comply with the original zone requirements (R-60) which existed before the Mount Laurel litigation and survive after the Mount Laurel obligation is satisfied. Plaintiffs' application must satisfy the development criteria for non-Mount Laurel development contained in Ordinance 140-306B(1).
The Wall Township Ordinance (emphasis added) defines "Mount Laurel development" as: "[a] development which includes affordable housing units on site or provides a contribution to the Wall Township Affordable Housing Trust Fund." From this, plaintiffs argue that, because they will provide a contribution to the housing trust fund, this makes their proposed subdivision a Mount Laurel development. If plaintiffs' view were correct, any development would constitute Mount Laurel development if $10,000 per lot were paid. The court does not agree with plaintiffs' position.
As set forth in Ordinance 140-295A(1) (DB-6):
The purposes of the Mount Laurel Zoning Districts shall be as follows:
In order to satisfy the constitutional obligations of the Township, as set forth by the New Jersey Supreme Court in its Mount Laurel I and Mount Laurel II decisions, greater flexibility in design, layout and construction of residential development must be permitted in order to encourage developers to participate in the Mount Laurel compliance process. The regulations established by [Article XLIII, Ordinances 140-295 to 140-313] are intended to promote that purpose and to meet the Township responsibilities to protect and defend its natural resources, ecological systems, open spaces, natural beauty and the value of property within the Township while at the same time providing for its fair share of the regional need for affordable housing.
Ordinance 140-137 further provides:
The restrictions and standards applicable to development in the ML (Mount Laurel) districts are the subject of court-approved settlements and the Fair Share Housing Plan of the Township.
Ordinance 140-306A also provides:
The ML-25 Zoning District consists of Block 811, [former] Lots 23 and 24, known as "Orchard Crest (Lions Head)" for 206 units on 171.2 acres.... Such Mount Laurel development is permitted by the Housing Plan Element of the Wall Township Master Plan adopted August 1, 1988; the Consent Order Approving Settlement entered March 3, 1989; and the developer's agreement. To the extent of any inconsistency among these documents, the terms of the consent order of March 3, 1989 shall govern.
Plaintiffs admit they are not Mount Laurel developers and their attempt to submit the application under that doctrine designed to establish affordable housing is *483 creative but not legally sustainable. Plaintiffs' proposed subdivision is clearly not a Mount Laurel application and does not advance the Township's fair share of affordable housing which has long since been satisfied.
The ordinances at issue were enacted years before plaintiffs filed their subdivision application. These ordinances provide clear, unequivocal, actual and/or constructive notice to all of the land use requirements of Wall Township. Ignorance of the ordinances does not exempt the applicants from the bulk requirements of the zone. See State v. DeMeo, 20 N.J. 1, 9, 118 A.2d 1 (1955). For these additional reasons the court holds the requirements of the R-60 Zone apply.

PLAINTIFFS' APPLICATION IS FOR A MAJOR SUBDIVISION AND IS PROPERLY BEFORE THE BOARD OF ADJUSTMENT
As defined in N.J.S.A. 40:55D-5, "major subdivision" is anything that is not deemed a "minor subdivision." Wall Township's definition of "minor subdivision" excludes plaintiffs' Lot 62 application. The ordinance (emphasis added) provides:
MINOR SUBDIVISIONA subdivision of land containing not more than one new lot, provided that such subdivision does not involve a planned development, any new street or the extension of any off-tract improvement.... A minor subdivision shall not adversely affect the development of the remainder of the parcel or adjoining properties and shall not be in conflict with any provision or portion of the Master Plan, the Official Map, or this chapter. A minor subdivision shall not involve property which was formerly part of a tract for which subdivision approval has been granted previously dividing the original tract into two or more lots, except that the latter provision may be waived by the Planning Board if it determines that the proposed subdivision will not be detrimental to the intent and purposes of [Chapter 140: Land Use and Development Regulations].
"A municipality may enact a zoning ordinance that alters the non-mandatory definitions in the MLUL." Rumson Estates, supra, 177 N.J. at 356, 828 A.2d 317. The zoning ordinance has "a presumption of validity," and the party challenging the ordinance bears the burden of overcoming that presumption. Reviewing courts should not be concerned over the wisdom of an ordinance. If debatable, the ordinance should be upheld. Id. at 350, 828 A.2d 317.
Plaintiff's Lot 62 is part of the Orchard Crest subdivision. Because the subdivision increased the permitted density (1.2 units per acre) under Ordinance 140-306A, variance relief was required as no minor subdivision was involved. N.J.S.A. 40:55D-70(d)(5) provides:
The board of adjustment shall have the power to ... [grant or deny] an increase in the permitted density as defined in [N.J.S.A. 40:55D-4], except as applied to the required lot area for a lot or lots for detached one or two dwelling unit buildings, which lot or lots are either an isolated undersized lot or lots resulting from a minor subdivision.
The requirements of the zone and its density are not waivable. Therefore, the application for a variance from the requirements of the R-60 Zone is mandated before the Board of Adjustment. Plaintiffs chose not to proceed and, therefore, have voluntarily opted not to exhaust their administrative remedies.
Plaintiffs further contend that Zoning Ordinance 140-295(B) provides *484 that the Planning Board shall be the approving authority for all applications for development in Mount Laurel zones, and the Zoning Board should have deferred to the Planning Board to determine whether the (d)(5) variance was applicable.
Waivers cannot usurp the Board of Adjustment's jurisdiction. When a(d)(5) variance exists, the Planning Board cannot waive the Board of Adjustment's jurisdiction under the MLUL even if the Planning Board could entertain a waiver were (d)(5) not implicated. Plaintiffs were before the proper land use board on October 19, 2005; they chose not to go forward.
For the reasons stated above, this court holds that the Planning Board has no jurisdiction to hear this matter.
Plaintiffs also argue they are entitled to automatic approval due to delays in the proceedings. The court does not agree. Automatic approval statutes should be "applied with caution," Eastampton Center L.L.C. v. Planning Board of Tp. of Eastampton 354 N.J.Super. 171, 193, 805 A.2d 456 (App.Div.2002), and rarely where there is no showing of bad faith or intentional delay on the part of the land board.
Clearly, if a board lacks jurisdiction over the subject matter of an application, no automatic approval can be obtained by the board's failure to act. See Chesterbrooke, Ltd. v. Planning Bd. of Tp. of Chester, 237 N.J.Super. 118, 126-27, 567 A.2d 221 (App.Div.), certif. denied, 118 N.J. 234, 570 A.2d 984 (1989).
Even if the Planning Board were mistaken regarding the jurisdictional question, which this court holds it was not, the remedy would be a remand and not automatic approval. In TWC Realty Partnership v. Zoning Bd. of Adjustment of Township of Edison, 315 N.J.Super. 205, 717 A.2d 439, (Law Div.1998), aff'd o.b., 321 N.J.Super. 216, 728 A.2d 338 (App.Div. 1999), the court, while severely criticizing a board of adjustment's determination that it lacked jurisdiction to hear a variance on the ground that it would effectively rezone the area, nevertheless remanded the matter for a hearing rather than granting an approval based on N.J.S.A. 40:55D-76(c). The court stated "The Board's decision below, dismissing TWC's use variance application based upon the purported lack of jurisdiction is, therefore, reversed, and the Board is directed to hear and decide the merits of the application.... I express no opinion with respect to the merits of those applications." Id. at 224-25, 717 A.2d 439.
Here, the Planning Board's expressed lack of jurisdiction is a reasonable interpretation of the statute and ordinance; there is no proof of bad faith or intentional delay on the part of the Planning Board. Unlike TWC Realty, here the Board of Adjustment was ready, willing and able to hear plaintiffs' application. Plaintiffs simply disagreed with the Board's decision as to which zoning requirements controlled, and they declined to go forward.
Plaintiffs' criticisms over delays in the proceedings are, for the large part, self-imposed. Plaintiffs themselves requested the June and July 2005 hearing date adjournments. The matter was rescheduled to September 2005. Because of a personal emergency, the Board of Adjustment's attorney needed to adjourn this date. Plaintiffs' attorney consented to this adjournment, though plaintiffs disavow their counsel's representation. The personal emergency was clearly a bona fide, good faith reason for the adjournment and cannot be used as grounds for automatic approval. Despite their contentions of delay, plaintiffs again requested an adjournment at the October 5, 2005, hearing, but would not consent to a time waiver until certain other of their demands were addressed. *485 The Board of Adjustment heard the application on the very next available date, October 19, 2005.
After the October 19, 2005, hearing, plaintiffs were given additional time to decide if they wanted to go forward. Thereafter, plaintiffs declined to go forward. After plaintiffs' decision was made, the resolution dismissing the application was prepared. Any delays during these proceedings were necessitated by plaintiffs' failure to join the Township.
The Planning Board's declination of jurisdiction was correct and the decision was made in good faith and timely under the circumstances. There is no legal or factual justification for automatic approval.
Although plaintiffs refused to go forward and dismissed their application, this court holds they may, within thirty days, resubmit their application for a subdivision pursuant to N.J.S.A. 40:55D-70(c) before the Board of Adjustment. If submitted, the application shall be considered under the requirements of the R-60 Zone. If the application is not resubmitted within thirty days, it shall be deemed waived.
For the reasons and authorities cited in this opinion, the actions of the Board of Adjustment and the Planning Board are affirmed.