STATE OF NEW JERSEY, (BOROUGH OF PARAMUS), COM-
PLAINANT-RESPONDENT, v. P. T. & L. CONSTRUCTION
COMPANY, INCORPORATED, DEFENDANT-APPELLANT.

Argued March 8, 1978—Decided June 12, 1978.

*Ms. Linda A. Palazzolo* argued the cause for defendant-appellant ,(*Messrs. McElroy, Connell, Foley & Geiser,* attorneys).

*Mr. Paul Dykstra* argued the cause for complainant-respondent (*Messrs. McCann* and *Hynes,* attorneys; *Mr. Edward H. Hynes,* on the brief).

The opinion of the court was delivered by

CONFORD, P. J. A. D. (temporarily assigned). This appeal is before the Court on direct certification to the Superior Court, Law Division,[1] 75 *N. J.* 584 (1977). The primary question for determination is whether use of vacant land as a helistop should be deemed a valid accessory use to property occupied as the headquarters of a construction company and used also for storage of its heavy equipment, within the meaning of a zoning ordinance permitting accessory uses "if customarily incident to a permitted use." Aside from the matter of the helistop use, the general use to which the property was being put was concededly permitted in the Limited Industrial Zone where located.

Defendant corporation was convicted in the Paramus Municipal Court on a charge of violation of the zoning ordinance "by committing the following offense(s) : Art. 14A

---

[1]Direct certification was granted here because the Court then had pending on certification a case involving the question of preemption of the statute regulating the operation of aircraft over zoning ordinances regulating heliports. *Garden State Farms Inc. v. Bay,* 146 *N. J. Super.* 438 (App. Div. 1977), certif. granted 74 *N. J.* 280 (1977). It was thought that disposition of the present appeal might also involve the same question, and the two appeals were argued together. However, the issue is not reached here.

Block 5202, Lot 7 Heliport prohibited." On appeal to the Bergen County Court, that tribunal held defendant's operation on the property of a helistop was permissible as an accessory use but that defendant was nevertheless in violation of the ordinance because it had not first secured site plan approval, a building permit and a certificate of occupancy for the heliport use. It was fined $100 and $10 costs. Defendant appealed to the Appellate Division from the conviction; the borough cross-appealed from the part of the ruling holding the heliport use a valid accessory use.[2]

The operative facts here involved are essentially undisputed. Defendant (P. T. & L.) is a construction company which maintains offices and a machinery storage area on property it has owned in the Borough of Paramus for 25 years. The property is located in a Limited Industrial Zone with the nearest residential area over 1000 feet away. The population of Paramus is approximately 30,000, and the borough is a part of a metropolitan area which is heavily built-up and densely populated.

P. T. & L. primarily handles road building projects. It does business in New York, New Jersey, Connecticut and other eastern states. Two or three times a week P. T. & L.'s executives travel to various locations to survey new construction projects and to supervise ongoing ones. Driving to and from these sites takes from 3 to $3\frac{1}{2}$ hours each way. To reduce the time, P. T. & L. purchased two helicopters

---

[2]There are technical problems with the cross-appeal. The record discloses no county court judgment, and the municipality was not aggrieved by the conviction of defendant incorporated in the court's opiinon. Moreover, a municipality may not appeal from an acquittal of a charge of violation of a penal ordinance. *City of Newark v. Pulverman*, 12 *N. J.* 105 (1953). However, since we are concluding herein that the defendant's use of its property did not violate the zoning restrictions, defendant has not been prejudiced by the appeal. We regard the public interest in the determination of the meritorious questions to justify our consideration of them despite the procedural shortcomings involved.

and established a helistop on its property. It was placed on a dirt covered area 100 feet from the edge of the motor vehicle parking lot. This use has not restricted other uses of the 3-acre lot. The only physical change in the helistop area was the laying of gravel thereon. This was done to lessen the dust from landings and take-offs.

On June 3, 1974, P. T. & L. applied to the Division of Aeronautics of the New Jersey Department of Transportation for a helistop license. See *N. J. S. A.* 6:1–20 *et seq.* On June 18, 1975 the Chief of the Bureau of Inspection & Aircraft Operation of the Division of Aeronautics wrote to the Mayor of Paramus, advising him of the application and stating that the Bureau had inspected the proposed site and found that it met the physical requirements for licensing as a Private Use Helistop. The mayor was invited to forward his objections and comments or a request for a public hearing by July 2, 1975, the date scheduled for the processing of P. T. & L.'s application. Thereafter the borough asked P. T. & L. for a site plan of the proposed location and the latter complied, although stating at the same time that the information sought on the application form did not appear relevant to a helistop which did not entail any construction. About six months passed with no action by the planning board or the State bureau, whereupon a summons was issued by the borough to P. T. & L. following the landing of a helicopter on the property in February 1976.

I

We first consider the borough's complaint against the county court's finding that the heliport was a valid accessory use. The pertinent sections of the zoning ordinance are as follows.

19–BIL–200: PERMITTED USES — LIMITED INDUSTRIAL ZONE

Within any BIL zone, no building, structure or area or lot or land, shall be used in whole or in part for other than one or more of the

permitted uses expressly set forth herein, or the special exception uses expressly set forth herein, or the accessory uses accessory and subordinate to the permitted uses and exception uses expressly set forth herein.

All uses not expressly permitted by this ordinance in the BIL zone district are prohibited.

19–BIL–200–150: ACCESSORY USES

An accessory use shall be permitted provided:

a) The use is customarily incident to a permitted use; and

b) Subordinate to the main permitted use; and

c) Not in violation of the provisions set forth hereafter.

The following accessory uses are permitted:

1. Storage of materials and supplies provided the same are within an enclosed building; and

2. Truck loading spaces as required by the provisions of this ordinance; and

3. Business signs and real estate signs provided the same comply with all ordinances pertaining thereto; and

4. Quarters for the accommodation of firemen and watchmen whose presence on the premises is required continuously during hours when the premises are not open; and

5. Private garage or parking area; and

6. Underground parking; and

7. Any required planting area or required planted buffer area; and

8. Planted area; and

9. Sidewalks; and

10. Driveways; and

11. Accessory parking garages or accessory parking structures provided that such accessory parking garages or accessory parking structures do not cover more than 25% of the total area of the parking lot. This coverage is in addition to the coverage of the lot permitted for the main building or buildings.

5–D: DEFINITIONS

＊ ＊ ＊ ＊ ＊ ＊ ＊ ＊

5–D–3. ACCESSORY BUILDING OR USE: A building or use that is:

a. On the same lot as and

b. Subordinate to, and

c. Under the same ownership or control as and

d. Used for the purposes customarily incidental to the use of the main building.

＊ ＊ ＊ ＊ ＊ ＊ ＊ ＊

5–B: Relation of Zoning Ordinance to other provisions of law.

5–B–10: Wherever the regulations, restrictions and provisions of this Ordinance are greater or more extensive than those required or imposed by any other statute, regulation, ordinance or private deed restriction, the terms of this Ordinance shall govern.

19–BIL–200–175: PROHIBITED USES
All uses not expressly permitted by this ordinance in the BIL zone district are prohibited.

Helistop or heliport uses are nowhere expressly alluded to in the ordinance. The municipality stresses the provision that all uses not expressly permitted in the limited industrial zone are prohibited and contends that the list of accessory uses specified in Section 19 BIL–200–150 is exclusive. P. T. & L. argues that the express allowance in that section of accessory uses where customarily incident to a permitted use and subordinate to the main permitted use is intended to extend beyond the eleven specific accessory uses enumerated thereafter. We are impressed by P. T. & L.'s contention that under the borough's proposed construction of the ordinance the introductory proviso alluding to "customarily incident" accessory uses would be meaningless as mere surplusage. Compare *Bass v. Allen Home Improvements Co.,* 8 *N. J.* 219, 224 (1951). The argument goes on to aver that the itemization of specific accessory uses was intended only to provide examples of valid accessory uses for ease of administration of the ordinance. This is persuasive. Otherwise any number of other uses, unquestionably incident to the main use as a matter of custom or convenience, would automatically be disqualified. See *Skinner v. Zoning Board of Adjustment of Cherry Hill,* 80 *N. J. Super.* 380, 386 (App. Div. 1963).

Concluding, therefore, that the ordinance permits accessory uses which are customarily incident to a permitted use and subordinate to the main permitted use, so long as not violative of any other affirmative requirement, we address the question whether the helistop use here implicated meets such specifications.

In analyzing whether a use is customarily incident to the permitted use, two determinations must be made. The first is whether the use is *incidental* to the main use: does the use "* * * bear a close resemblance and obvious relation

to the main use to which the premises are put"? *Honigfeld v. Byrnes*, 14 *N. J.* 600, 606 (1954); see *Booth v. Bd. of Adjust. of Rockaway Twp.*, 50 *N. J.* 302 (1967); *United Advertising Corp. v. Metuchen*, 42 *N. J.* 1 (1964); *Dolan v. DeCapua*, 13 *N. J. Super.* 500 (Law Div. 1951); *DeBenedetti v. Twp. of River Vale*, 21 *N. J. Super.* 430 (App. Div. 1952); *Keller v. Westfield*, 39 *N. J. Super.* 430 (App. Div. 1956). Second, it must be determined whether a use which is found to be incident to the permitted use is also a customary use. See *Newark v. Daly*, 85 *N. J. Super.* 555 (App. Div. 1964), aff'd 46 *N. J.* 48 (1965). Generally, a use which is so necessary or commonly to be expected that it cannot be supposed that the ordinance was intended to prevent it will be found to be a customary use. *Chatham v. Donaldson*, 69 *N. J. Super.* 277, 282 (App. Div. 1961); *Northvale v. Blundo*, 85 *N. J. Super.* 56, 60 (App. Div. 1964); see *Wright v. Vogt*, 7 *N. J.* 1 (1951). The fact that a use is not customarily indulged in, however, is not conclusive, and even if the use in question is found in a small percentage of similar main uses, the use may still be found to be "customary." *Newark v. Daly, supra*, 85 *N. J. Super.* at 560–561; see *Skinner v. Board of Adjust. of Cherry Hill*, 80 *N. J. Super.* 380 (App. Div. 1963).

In the instant case the main use to which the premises are put is as the headquarters for a construction company. The company's executives need to travel to inspect job sites in nearby states, and they urge that due to the distances involved, air travel is the most efficient method to visit these job sites. As a result of the necessity for construction managers to maintain close contact with (and supervision of) ongoing construction projects, the use of land as a heliport seems in fact to be incident to the main use of the premises as the headquarters for a construction company. In addition, there were several heliports within Paramus as well as at least eight other New Jersey construction companies oper-

ating heliports to facilitate transportation between their headquarters and ongoing projects.

Paramus argues, however, that due to the heavily residential nature of the municipality, it can be supposed that the drafters of the ordinance intended to prohibit any use of heliports. *Cf. Zahn v. Newark,* 45 *N. J. Super.* 516, 520 (App. Div. 1957). In addition, the borough urges that use of a heliport is not so necessary that it must be supposed that the ordinance contemplates that use. It says that defendant and other residents of Paramus could easily utilize nearby Teterboro Airport. See *id.* at 522. However, helistops and heliports were already in existence in Paramus as accessory uses when the ordinance provisions now in dispute were adopted. Hence it cannot be concluded that they were not then in contemplation as accessory uses by the municipal legislature.

Moreover, Paramus's analysis finds little support in the reported cases. Although courts, in discussing accessory uses, have referred to "necessity," cases in this jurisdiction have classified uses as accessory uses even though they were not strictly necessary to the fulfillment of the permitted use. *E.g., United Advertising Corp. v. Metuchen, supra,* 42 *N. J.* at 7 (1964) (on premises advertising sign is accessory to main use as a business); *Wright v. Vogt,* 7 *N. J.* 1 (1951) (radio tower used by amateur radio operator is accessory to main use as a residence); *Newark v. Daly,* 85 *N. J. Super.* 555 (App. Div. 1964), aff'd 46 *N. J.* 48 (1965) (coin-operated milk machine accessory to main use as apartment building).

Clearly distinguishable, we think, are cases involving the use of aviation facilities other than helistops or heliports, such as airstrips for fixed-wing airplanes. See *Samsa v. Heck,* 13 *Ohio App.* 2d 94, 234 *N. E.* 2d 312 (Ct. App. 1967) (airstrip not customarily incident to single family residence); *Town of Harvard v. Maxant,* 360 *Mass.* 432, 275 *N. E.* 2d 347 (Sup. Jud. Ct. 1971) (same). But see

*Schantz v. Rachlin,* 101 *N. J. Super.* 334 (Ch. 1968), aff'd o. b. 104 *N. J. Super.* 154 (App. Div. 1969).

A case requiring special note is *Gray v. Ward,* 74 *Misc.* 2d 50, 343 *N. Y. S.* 2d 749 (Sup. Ct. 1973), aff'd o.b. 44 *A. D.* 2d 597, 354 *N. Y. S.* 2d 591 (App. Div. 1974). There the court held against the claimed accessory use of a department store roof as a helipad for use of store executives in travelling to and from branch stores. The pertinent ordinance required the use to be one "clearly incidental to and customarily found in connection with such principal use." It was ruled that even with the increased use of helicopters the proposed use was not a customary use because helipads had not commonly and "by long practice been established as reasonably associated with the primary use" of the premises as a retail store. 343 *N. Y. S.* 2d at 754. Without any implication as to the applicability of the result there in the context of the ordinance before us here, the rationale does not necessarily accord with that of cases in our State which have our approval. As explicated in *Newark v. Daly, supra,* it is not essential to the concept of "customarily incident" that a majority or even a substantial percentage of a given type of principal use should in fact be accompanied by the mooted accessory use. 85 *N. J. Super.* at 560–561. Thus, as already noted, it is not here controlling that most construction firms do not use helipads as incident to the main use of their headquarters' property. The record indicates that this business practice is increasingly coming into vogue and that there is a distinct functional relationship between such use and the business which P. T. & L. conducts as the main use of its property. We think these facts and circumstances suffice to bring the use within the accessory coverage of the ordinance and so hold. *Cf. Boublis v. Garden State Farms, Inc.,* 122 *N. J. Super.* 208, 215–217 (Law Div. 1972) (heliport as accessory use to large dairy plant). If the conditions and situation of a particular municipality lead its governing body to believe that tighter restrictions

than those before us in this case are reasonably necessary or desirable, it is free so to provide in its ordinance.[3]

We thus approve the determination of the county court concerning the permissibility of the defendant's helistop as an accessory use of the property in question under the Paramus zoning ordinance.

## II

We turn to defendant's appeal from the conviction for violation of the ordinance in respect of failure to obtain a building permit and a certificate of occupancy or to secure approval of a site plan.

We could well reverse the conviction on the ground that the alleged defaults of defendant in these respects were not the violations charged against it in the municipal court. The only charge there made, beyond an ambiguous citation of section numbers, was "Heliport prohibited." That charge was the sole basis of conviction in the municipal court. The articulation of the charge was not effective to apprise defendant that it was being accused of failure to obtain a building permit, certificate of occupancy or approval of a site plan for a use otherwise permitted by the ordinance. *Cf. State v. Campisi,* 23 *N. J.* 513 (1957). While *R.* 3:23-8(c) provides that the taking of an appeal to the county court operates as a consent to amend the complaint so as to substitute any charge growing out of the acts complained of in the municipal court, no such amendment of the complaint was made here and defendant was therefore not on notice of any such expanded charge.

Nevertheless we believe it in the public interest to state our views as to why there was no valid case against defend-

---

[3]This statement is subject to such determination as the Court may make in the pending appeal referred to in note 1, *supra,* where the matter of preemption of State over local regulations concerning aircraft, or the relationship between them, is under consideration.

ant on the extraneous matters explored by the county court. Doing so may forestall further needless litigation in this extended controversy.

Preliminarily, the borough's brief does not undertake to support the county court's adjudication that defendant should have sought a building permit or a certificate of occupancy. It argues only the requirement for site plan approval by the planning board. The pertinent section of the ordinance reads:

No person shall alter any parking area, parking aisles, grades, slopes, manholes, traffic signs on the lot, ingress and egress roads, ·required planting area or required buffer area, sidewalks, drainage facilities, fencing, lighting, utility facilities, curbing, acceleration or deceleration lanes on any lot or lots other than lots zoned or used for residential dwelling purposes only without first obtaining site plan approval by Resolution of the Planning Board of the Borough of Paramus.

In considering whether the evidence shows that defendant altered any parking area on its property, within the contemplation of the foregoing provision, as contended by defendant, we are guided by the settled rule that since a charge of violation of a zoning ordinance is penal in nature, conviction should not be had where the terms of the ordinance do not clearly prohibit the complained of conduct. *Maplewood v. Tannenhaus,* 64 *N. J. Super.* 80, 89–90 (App. Div. 1960), certif. den. 34 *N. J.* 325 (1961); *Town of Kearny v. Modern Transportation Co.,* 116 *N. J. Super.* 526, 529 (App. Div. 1971). The only indication of anything remotely resembling an "altering" of the land sought to be used as the helistop was the placing of some gravel on the bare earth to lessen dust on landings and take-offs. To regard this expansively as an alteration and thereby penalize defendant for failure to obtain approval of a site plan therefor (putting to one side the fact that a site plan was in fact submitted by defendant for approval and ignored for months) would do violence to the principle

adverted to above of strict construction of zoning ordinances in the penal context.

There is even considerable doubt whether the area in question ever constituted a "parking area." The borough contends it was used to store heavy equipment. But the only relevant testimony was that the precise location of the helistop was "100 feet off the end of the parking lot" and that heavy equipment was parked on a different part of the property.

On the whole case, the determination by the county court that the facts were such as properly to invoke the ordinance provision for site plan approval is not supported by adequate evidence or by a fair construction of the language of the provision in question.

No building permit was required as no construction took place. As to a certificate of occupancy, there is no contention by the borough that such a certificate could properly have been withheld if its other purported justifications for prohibiting this use were rejected, as we have held they must be. And, as noted, the borough has not attempted to justify the conviction before us on that ground. The conviction must be set aside.

In view of our conclusions on the issues discussed, we do not reach the merits of defendant's alternative contention that the borough was precluded from legislating regulation of heliports or helistops through the zoning ordinance because of the alleged preemptive effect of State regulation of aircraft under *N. J. S. A.* 6:1–20 *et seq.*

Judgment reversed.

*For reversal*—Justices SULLIVAN, PASHMAN, CLIFFORD, SCHREIBER and HANDLER and Judge CONFORD—6.

*For affirmance*—None.