**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0365-19

MONICA MALONE,

     Plaintiff-Appellant,

v.

CITY OF BRIGANTINE,
and PLANNING BOARD OF THE
CITY OF BRIGANTINE,

     Defendants-Respondents.

_____

Argued January 25, 2021 – Decided July 16, 2021

Before Judges Messano, Hoffman and Suter.

On appeal from the Superior Court of New Jersey, Law Division, Atlantic County, Docket Nos. L-6601-14, L-2493-17, and L-0953-18.

Janine G. Bauer argued the cause for appellant (Szaferman Lakind Blumstein & Blader, PC, attorneys; Janine G. Bauer, on the briefs).

Hance C. Jaquett argued the cause for respondent Brigantine Planning Board.

Alfred R. Scerni, Jr. argued the cause for respondent City of Brigantine (Parker McCay, PA, attorneys; Michael J. Coskey and Alfred R. Scerni, on the brief).

PER CURIAM

In 2008, plaintiff Monica Malone purchased via quitclaim deed three parcels of undeveloped land in the City of Brigantine (the City) for one dollar. One parcel — Lot 25 — was 3.76 acres, partially submerged and adjacent to a navigable waterway (the Property). In 1985, the Brigantine Planning Board (the Board) granted subdivision approval to King's Cove Limited Partnership (the Developer). The Board's resolution required the Property be designated on the "final plat" as a "reserved area," and that it "remain open space in accordance with CAFRA[1] requirements." The resolution further provided that all "open space" in the development "be maintained by a [h]omeowner's [a]ssociation or some other responsible entity."

The filed plat map designated the Property as a "reserved area," but it did not contain the remaining language from the Board's resolution. The general notes on the map indicated the lot was "to be deeded to the City . . . with the stipulation that it shall remain dedicated to open space public recreational use." The Board's resolution was not publicly recorded.

---

[1] The Coastal Area Facility Review Act (CAFRA), N.J.S.A. 13:19-1 to -51.

Plaintiff purchased the lots from the Developer's successor in interest without conducting a title search. In 2012, Super Storm Sandy washed a sailboat ashore on the Property. Plaintiff negotiated with its owner, acquired the boat, and stored it on a trailer on the Property. In 2014, the City engineer and Zoning Officer issued plaintiff summonses for violations of two sections of the City's Land Use Ordinance, specifically alleging that storage of the boat was not a permitted use, nor was its storage permitted in the front yard of a lot.

Plaintiff filed a complaint against the City in the Law Division seeking: 1) declaratory relief, specifically that she could lawfully use the Property to store her boat; 2) enjoining the City from enforcing the summonses; and 3) alleging the City violated her Due Process rights by effecting a "regulatory taking" of the Property.[2] The City filed an answer, and both parties subsequently moved for summary judgment. The judge denied both motions without prejudice, and his

---

[2] Plaintiff alleged other causes of action in Counts IV and V of her complaint that were subsequently dismissed by the trial court. Plaintiff makes no argument in her brief regarding the August 2019 order dismissing those counts. "An issue not briefed is deemed waived." W.H. Indus., Inc. v. Fundicao Balancins, Ltda, 397 N.J. Super. 455, 459 (App. Div. 2008) (citing In re Freshwater Wetlands Permit, 379 N.J. Super. 331, 334 n.1 (App. Div. 2005)).

March 23, 2017 order required plaintiff to "exhaust available administrative remedies"; he stayed the litigation pending proceedings before the Board.[3]

Plaintiff filed an application with the Board for an interpretation of the City's zoning regulations. See N.J.S.A. 40:55D-70(b) (giving municipal boards of adjustment the right to hear and decide requests for interpretation of the zoning map or ordinance or decide "other special questions" authorized by ordinance).[4] The Board conducted a hearing, at which plaintiff's expert planner and the City's planner testified, and the Board also considered the deposition of the City's Zoning Officer. In its September 27, 2017 resolution, the Board rendered its interpretation of the zoning regulations, stating that the Property "continues to be an open space lot, which is reserved only for the uses permitted under CAFRA and the . . . Zoning Code." Boat storage and maintenance was not "a permitted use on an open space lot within the R-6 Zoning District."

Plaintiff then filed an application for a use variance pursuant to N.J.S.A. 40:55D-70(d) and site plan approval. Plaintiff proposed storing her boat on "porous pavers" or some other material approved by the Board and stated her

---

[3] Plaintiff does not challenge the March 23, 2017 order.

[4] The Board is a unified board that also exercises all powers of a board of adjustment pursuant to N.J.S.A. 40:55D-25(c).

intention to run electrical service to the storage site, a very small portion of the Property. The Board held another hearing, and, on March 28, 2018, approved a resolution denying plaintiff's application for a use variance; it therefore did not consider the site plan application.

Plaintiff filed separate prerogative writ actions challenging the Board's resolutions. After plaintiff and the City renewed their prior motions for summary judgment, all three complaints came before a different judge for oral argument. In a comprehensive written opinion, Judge Julio L. Mendez denied plaintiff's request for declaratory relief, concluding she was not allowed to "park and store her boat permanently on" the Property.

The judge dismissed the summons charging plaintiff with a violation of Brigantine, N.J., Code §198-63(G)(1) (2016) of the zoning regulations, which prohibited the storage of boats and vehicles on the "front yard" of a lot. He concluded that the undeveloped Property had no front yard. The judge also found that plaintiff violated Brigantine, N.J., Code §198-61(B) (2016), which prohibited uses not permitted in a particular zone. However, "in the interest of justice [and] due to the passage of time," the judge dismissed this summons too, stating that plaintiff must come into compliance and "remove the boat from her

A-0365-19

property . . . in the next [sixty] days."[5]  He also denied plaintiff's challenge to the two Board resolutions and dismissed those prerogative writ complaints. Judge Mendez entered the May 7, 2019 order which we now review.

## I.

In Point I of her brief, plaintiff challenges the City's ability to enforce the restriction in the Board's 1985 resolution requiring that the Property remain "open space," arguing that because the resolution was not recorded, even a diligent search of public records would not have placed her on notice of the restriction.  In Point II, plaintiff contends that even if the restriction applied, it did not prohibit her use of a small portion of the Property to store her boat.

## A.

Judge Mendez rejected plaintiff's first argument, concluding "if plaintiff had been diligent, she would have located the Final Plat, which designated the property as a reserved area."  Noting the Property was waterfront property that remained undeveloped since 1985, and that plaintiff purchased the Property via

---

[5]  The judge did not address Counts IV and V of plaintiff's complaint against the City, permitting the parties to provide further briefing.  As noted, he ultimately dismissed those complaints, concluding the City had not violated plaintiff's equal protection rights, and, since plaintiff had not attempted to bring the Property into compliance with federal or state law, her request to enjoin the City from interfering with such efforts was "premature."

A-0365-19

a quitclaim deed for one dollar, the judge reasoned "[a] diligent buyer should have known that the purchase was too good to be true and should have inquired further."

Before us, plaintiff takes issue with this logic, noting that in the absence of other evidence or expert testimony, the judge had no reasonable basis to conclude that a diligent title searcher would have made further inquiry based only on the filed subdivision map. While conceding she did not conduct a title search of the Property, citing Island Venture Assocs. v. N.J. Dep't of Env't Prot., 179 N.J. 485 (2004), plaintiff asserts that she is only bound by restrictions that a diligent search would have disclosed. She notes that when the Developer wanted to convey the Property to the City, a title search conducted in 2008 did not reveal the Board's restriction.

Plaintiff also argues that a reasonable person could construe the phrase "reserved area" on the map to apply only to a portion of the Property. She notes that other recorded plat maps contained specific language for other lots, such as "reserved for future development." We reject these contentions.

We start by recognizing that "a grantee will be charged with notice of those restrictions present and discoverable in their chain of title, even if their deed does not, itself, state such restrictions." Pearson v. DMH 2 LLC, 449 N.J.

A-0365-19

Super. 30, 51 (Ch. Div. 2016) (citing Olson v. Jantausch, 44 N.J. Super. 380, 388 (App. Div. 1957)).  "[P]arties are generally charged with constructive notice of instruments that are properly recorded."  Cox v. RKA Corp., 164 N.J. 487, 496 (2000) (citing Friendship Manor, Inc. v. Greiman, 244 N.J. Super. 104, 108 (App. Div. 1990)).  "[C]onstructive notice arises from the obligation of a claimant of a property interest to make reasonable and diligent inquiry as to existing claims or rights in and to real estate."  Friendship Manor, 244 N.J. Super. at 108 (citing Scult v. Bergen Valley Builders, Inc., 76 N.J. Super. 124, 135 (Ch. Div. 1962), aff'd, 82 N.J. Super. 378 (App. Div. 1964)).

Additionally, "a party may be charged with inquiry notice where there are facts or circumstances indicating some outside claim that would prompt a reasonable purchaser to investigate further."  Pearson, 449 N.J. Super. at 50 (citing Friendship Manor, 244 N.J. Super. at 108).  Therefore, a "claimant will be charged with knowledge of whatever such an inquiry would uncover where facts are brought to his [or her] attention, 'sufficient to apprise . . . of the existence of an outstanding title or claim, or the surrounding circumstances are suspicious and the party purposefully or knowingly avoids further inquiry.'"  Friendship Manor, 244 N.J. Super. at 108 (quoting Scult, 76 N.J. Super. at 135).

A-0365-19

Plaintiff's reliance on Island Venture is misplaced. There, the Court concluded that a good faith purchaser was not bound by a restriction imposed in an unrecorded CAFRA permit "[b]ecause the restriction could not be found by a diligent search of [the] record title." 179 N.J. at 486. However, in Island Venture, the plaintiff purchaser ordered a title report prior to purchasing the two lots at issue, and neither the title report nor the deed revealed the restriction. Id. at 488 (emphasis added).

When the plaintiff sought approval to build on the two lots, the town sought the Department of Environmental Protection's (DEP) review under the existing CAFRA permit. Ibid. After originally advising the plaintiff it needed only a minor modification of the prior approval, DEP "reversed course," invoking the prior condition which prohibited any residential construction. Id. at 489. The Court concluded the plaintiff-purchaser should not be bound by the permit's restriction, noting "the equities clearly favor [the plaintiff], which did all that was required of it legally or reasonably to determine the existence of the now-disputed restriction." Id. at 493. Here, plaintiff did nothing to assess the state of title to nearly four acres of waterfront property in an established, planned unit development prior to purchasing the Property via a quitclaim deed for one dollar.

9

Judge Mendez correctly distinguished <u>Mintz v. Twp. of Millstone</u>, 374 N.J. Super. 396 (2005), another case plaintiff cited for support. There, the land use board denied the plaintiff further subdivision of his lot, relying upon a condition imposed on approval of his predecessor-in-title's subdivision application that prohibited any further subdivision. <u>Id.</u> at 398. We affirmed the trial judge's decision reversing the board's denial, noting the restriction was not in the minutes of the board meeting approving the prior subdivision or anywhere else on record; instead, the board's denial "relied upon the statements of persons in the community." <u>Id.</u> at 399–400.

We conclude, as did Judge Mendez, that plaintiff was on inquiry notice based on the nature of the property, its location, the quitclaim deed, and the purchase price of a single dollar, and she was, or should have been, on constructive notice from the filed map of the conditions imposed on the Property by the Board's 1985 resolution. The resolution itself was apparently readily obtainable from the Board's archives. There are no equitable considerations whatsoever that justify plaintiff relief from those conditions.

B.

Alternatively, plaintiff contends that even if she is bound by the Board's 1985 Resolution, the Board never decided what are permitted uses for the

Property consistent with CAFRA, and storage of her boat is not inconsistent with "open space" preserved for "public recreation." According to plaintiff, since boating is "the most obvious form[] of 'public recreation'" on a navigable waterway, storing her boat on the Property is consistent with "open space" as defined by CAFRA's regulations. We disagree.

CAFRA does not define "open space" or "public recreation." See N.J.S.A. 13:19-3. Judge Mendez cited DEP's "Coastal Zone Management Rules" promulgated under CAFRA. Specifically, N.J.A.C. 7:7-9.38 deals with "Public open space." Subsection (a) provides: "Public open space constitutes land areas owned or maintained by State, Federal, county and municipal agencies or private groups (such as conservation organizations and homeowner's associations) and used for or dedicated to . . . public recreation . . . ." N.J.A.C. 7:7-9.38(a) (emphasis added). The judge reviewed other statutes, including N.J.S.A. 40:55D-5, part of the definitional sections of the Municipal Land Use Law (MLUL), N.J.S.A. 40:55D-1 to -163, which defines "'[o]pen-space' [as] any parcel or area of land . . . essentially unimproved and set aside, dedicated, designated or reserved for public or private use or enjoyment or for the use and enjoyment of owners and occupants of land adjoining or neighboring such open space . . . ." Judge Mendez concluded "there [was] a significant distinction

between storage and parking of the boat on the . . . [P]roperty and the launching of the boat into the waterways."

We agree that storage of a sailboat on a trailer is not a use consistent with the definition of "public open space" in N.J.A.C. 7:7-9.38(a), which by its terms applies to "land areas owned or maintained by [governmental] agencies or private groups (such as . . . homeowner's associations)." Plaintiff owns the Property, and nothing in the record suggests she permits members of the public or the condominium association to use it for any purpose, including "public recreation."

The Board's resolution, however, used the term "open space," and the CAFRA regulations seemingly describe both public and private open space. See, e.g., N.J.A.C. 7:7-9.38(b) ("New or expanded public or private open space development is encouraged at locations compatible or supportive of adjacent and surrounding land uses.") (emphasis added). Private open space, however, is never defined. Nevertheless, the regulations define "[d]evelopment" and contemplate "the construction, relocation, or enlargement of the footprint of development of any building or structure and all site preparation therefor . . . ." N.J.A.C. 7:7-1.5. Storing a boat on a trailer is not "private open space development" under CAFRA. Moreover, the entire focus of N.J.A.C. 7:7-9.38

12

is to enhance the "increasingly important role" that "more <u>public open space</u>" will play in satisfying the "State's expanding population." N.J.A.C. 7:7-9.38(h) (emphasis added).

There is nothing in the record that indicates plaintiff sought a determination from DEP whether the proposed storage of her boat on pavers was consistent with "open space" under CAFRA, or that any of the statute's permitting requirements would be waived in those circumstances. <u>See</u> N.J.A.C. 7:7-2.5 (allowing a person to request "a written applicability determination" from DEP).[6] As we noted, plaintiff sought to restrain the City from interfering with any efforts she intended to pursue directly with the State to "bring her use of the property into compliance"; the judge dismissed that count of the complaint, finding the requested relief was premature, since plaintiff admittedly "ha[d] not taken any steps" to do so. On the record before us, we cannot conclude that the storage of plaintiff's boat on pavers is permitted by the

---

[6] In a footnote in her brief, plaintiff states that DEP approved the construction of docks on the Property, "which have been completed and . . . are in use." She also asserts without any citation or authority that she "could construct a small boathouse on her lot to house her sailboat consistent with [the Property's] designation as 'open space in accordance with CAFRA requirements,'" but she has elected instead to choose the "less intrusive" course of storing the boat on a trailer on pavers.

restriction in the Board's 1985 resolution that the Property remain an "open space lot, . . . reserved only for the uses permitted under CAFRA."

## II.

Plaintiff next argues that storage of her boat on the Property was not prohibited under the City's land use regulations. We discern the argument to challenge the Board's September 2017 resolution that concluded "boat storage and maintenance [was] not a permitted use" for the Property.

The Board's September 2017 resolution contained factual findings, including its determination that although "the definition of open space in Brigantine's ordinance provides that recreation . . . purposes are permitted uses on an open space lot, the private storage of a boat is not a recreational use." This conclusion coincided with that of the Board's expert planner. The Board also rejected plaintiff's expert's opinion that the Property should no longer be "considered as open space since it was never conveyed" to the homeowner's association as anticipated when the Board first approved the project.

Judge Mendez determined that the R-6 zone's permitted principal uses were single-family homes or townhouses. The judge noted that "[t]he most significant restrictions on plaintiff's property do not come from the land use ordinance," but rather from the "open space restriction established by the . . .

14

Board at the time of the approval of the development." He noted that because "the parties raised the issue of principal or accessory use," he would address the issue.[7]

After reviewing the ordinance's definition of accessory use, the judge reasoned that an accessory use must be "incidental to and subordinate to the principal use." Since the Property was limited to "open space," storage of the boat could not be an "incidental" accessory use.

Plaintiff's argument before us is that defendants cannot, through application of the City's zoning regulations, compel her to use the Property in a way that conforms with only the permissible uses in the zone, i.e., construction of a one-family house or townhouse. She notes that defendants concede she may use the Property to access the adjoining waterway for her own recreational purposes by allowing her to keep kayaks and skiffs on the Property. Plaintiff contends that if her recreational use of the Property is a permitted use, the storage of her sailboat on pavers with the planned extension of electrical service to the site is a permitted ancillary use. We disagree.

---

[7] This was recognition that plaintiff never asserted before the Board that storage of the boat was a permitted accessory use.

A-0365-19

In reviewing the trial court's decision of an appeal from the decision of municipal land use board, we apply the same standards as the trial court. Fallone Props., LLC v. BethlehemTwp. Plan. Bd., 369 N.J. Super. 552, 562 (App. Div. 2004) (citing Fred McDowell, Inc. v. Bd. of Adjustment of Wall, 334 N.J. Super. 201, 212 (App. Div. 2000)). "We have long recognized that zoning boards, 'because of their peculiar knowledge of local conditions[,] must be allowed wide latitude in the exercise of delegated discretion.'" Price v. Himeji, LLC, 214 N.J. 263, 284 (2013) (alteration in original) (quoting Kramer v. Bd. of Adjustment, Sea Girt, 45 N.J. 268, 296 (1965)).

A local board's decision "enjoy[s] a presumption of validity, and a court may not substitute its judgment for that of the board unless there has been a clear abuse of discretion." Ibid. (citing Cell S. of N.J., Inc. v. Zoning Bd. of Adjustment of W. Windsor Twp., 172 N.J. 75, 81 (2002)). "Because a [board's] actions are presumed valid, the party 'attacking such action [has] the burden of proving otherwise.'" Northgate Condo. Ass'n v. Borough of Hillsdale Plan. Bd., 214 N.J. 120, 145 (2013) (alterations in original) (quoting Cell S. of N.J., 172 N.J. at 81). That party must demonstrate the board's decision was "arbitrary, capricious, or unreasonable." Ibid. In other words,

> [t]he challenger must show that the Board engaged in
> "willful and unreasoning action, without consideration

A-0365-19

and in disregard of circumstances. Where there is room for two opinions, action is [valid] when exercised honestly and upon due consideration, even though it may be believed that an erroneous conclusion has been reached."

[Id. at 145–46 (second alteration in original) (quoting Worthington v. Fauver, 88 N.J. 183, 204–05 (1982)).]

"Although a municipality's informal interpretation of an ordinance is entitled to deference, that deference is not limitless." Bubis v. Kassin, 184 N.J. 612, 627 (2005) (citing Fallone Props., 369 N.J. Super. at 561). "[T]he meaning of an ordinance's language is a question of law that we review de novo." Ibid.; see also Wyzykowski v. Rizas, 132 N.J. 509, 518 (1993).

"Zoning ordinances which permit 'customarily incidental' accessory uses to the main activity permit, by implication, any use that logic and reason dictate are necessary or expected in conjunction with the principal use of the property." Charlie Brown of Chatham, Inc. v. Bd. of Adjustment for Twp. of Chatham, 202 N.J. Super. 312, 323 (App. Div. 1985) (quoting 6 Powell, Law of Real Property ¶ 869 (1979)). We acknowledge plaintiff's point that

whether an unmentioned use may be a permissible accessory use is not determinable solely by resort to a listing of those things which are authorized and those things which are prohibited. We must also consider . . . whether the circumstances permit a determination that the use in question is an implied accessory use.

17

[DaPurificacao v. Zoning Bd. of Adjustment of Twp. of Union, 377 N.J. Super. 436, 442 (App. Div. 2005).]

A use is incidental if it "bear[s] a close resemblance and obvious relation to the main use to which the premises are put." Tanis v. Twp. of Hampton, 306 N.J. Super. 588, 604 (App. Div. 1997) (quoting State v. P.T. & L. Constr. Co., Inc., 77 N.J. 20, 26–27 (1978)). Plaintiff admittedly constructed a dock to permit seasonal access to the waterway and allow her full enjoyment of the asserted permitted recreational use of the Property. Nothing in the record indicated the storage of the sailboat on a trailer on pavers in an otherwise vacant lot was necessarily customary or incidental to plaintiff's recreational use of the Property, i.e., that the boat would be launched from the property. Judge Mendez noted this distinction.

Hundreds, if not thousands, of boatowners in this state store their craft at marinas, or on trailers on their properties if permitted, when the boats are not otherwise in the water. Simply put, storage of the sailboat does not bear the requisite "close resemblance and obvious relation" to a permitted use of the Property under the City's definition of accessory uses or the relevant case law. Ibid.

Lastly, plaintiff argues that even if the Board correctly construed its zoning regulations, its denial of a use variance effectively zoned the Property into inutility and amounted to an unconstitutional taking without just compensation. She claims an inability to use the Property for anything other than walking, sunbathing, or storing her kayaks and skiffs on it; defendants do not contend otherwise.

After the Board concluded the storage of the boat was not a permitted use for the Property, plaintiff applied for a use variance, and as already noted, the Board denied that request. The Board's March 2018 resolution contains its determination that boat storage and maintenance was not a "recreational use," nor one that "would promote the health, safety and welfare of the general public." Again, the resolution reflects the Board's acceptance of its own expert's opinions and rejection of plaintiff's expert's opinions.

Judge Mendez found that the Board's decision was supported by sufficient evidence in the record. Recognizing the Board's action was presumptively valid, he concluded the Board had not acted arbitrarily, capriciously, or unreasonably in denying the use variance. We agree completely with this conclusion. Plaintiff failed to demonstrate that her proposed use of the Property, i.e., the storage of

her sailboat, justified relief under N.J.S.A. 40:55D-70(d). See Price, 214 N.J. at 285–86 (explaining the positive and negative criteria an applicant must prove to secure a use variance).

In considering plaintiff's constitutional claim, Judge Mendez recognized "the takings analysis . . . [was] different than most because plaintiff did not purchase this property to develop it nor [are] there new regulations that have suddenly changed the permitted uses of the property." The judge further concluded:

> The regulatory scheme in this case substantially advances a legitimate public purpose which is to preserve coastal areas and maintain open space. The regulatory scheme does not excessively interfere with property rights and interest because plaintiff has no absolute and unlimited right to change the essential natural character of her land. The [c]ourt is satisfied that a taking has not occurred. Plaintiff should have been aware of the restrictions on the property when she purchased it and the purchase price . . . reflected the limited use [of] Lot 25.

The Court has long recognized "that depriving an owner of undeveloped land of all beneficial use of that land for a significant period of time was a 'taking.'" Washington Mkt. Enters., Inc. v. City of Trenton, 68 N.J. 107, 118 (1975) (citations omitted). "[T]here is no doubt that land use restraints can amount to a taking of property." Ibid. (citing Pa. Coal Co. v. Mahon, 260 U.S.

393 (1922)).  Additionally, "undue hardship in the form of economic inutility has been acknowledged to constitute a special reason to support a use variance." Medici v. BPR Co., 107 N.J. 1, 17 n.9 (1987) (citations omitted).  Nevertheless,

> A regulatory scheme will be upheld unless it denies "all practical use" of property; or "substantially destroys the beneficial use of private property," or does not allow an "adequate" or "just and reasonable" return on investment.  Significantly, our courts have applied the standard that focuses on the beneficial or economic uses allowed to a property owner in the context of particularized restraints designed to preserve the special status of distinctive property and sensitive environmental regions.
>
> [Gardner v. N.J. Pinelands Comm'n, 125 N.J. 193, 210–11 (1991) (emphasis added) (first quoting Harrington Glen, Inc. v. Mun. Bd. of Adjustment, 52 N.J. 22, 29 (1968); then quoting Schiavone Constr. Co. v. Hackensack Meadowlands Dev. Comm'n, 98 N.J. 258, 263 (1985); and then quoting Holmdel Builders Ass'n v. Twp. of Holmdel, 121 N.J. 550, 581–82 (1990)).]

Of course, we deal in this case not with an unreasonable restriction on the use of the Property occasioned by defendants' enforcement of its zoning regulations.  As Judge Mendez noted, the Property is in a zone that permits development of one-family homes and townhomes.  Plaintiff never sought to use the Property for one of the uses permitted by the zoning regulations, and, for reasons already discussed, the decision to deny her a variance for the use she proposed was not arbitrary, capricious, or unreasonable.  The issue rather is

21

whether continued enforcement of the condition the Board imposed on the Property when it granted approval of the original development in 1985 results in an unconstitutional taking of plaintiff's property.

"[A]bsent changed circumstances, a party may be estopped from seeking further development of property where a prior approval is expressly conditioned on a restriction against that course." Allied Realty v. Borough of Upper Saddle River, 221 N.J. Super. 407, 415–16 (App. Div. 1987) (citing Charlie Brown of Chatham, 202 N.J. Super. at 318, 327). A land use board may consider, however, "a new application for a variance, . . . or for modification . . . of one already granted, 'or for lifting conditions previously imposed,' upon a showing that the continued enforcement of the restriction would frustrate an appropriate purpose." Id. at 414 (emphasis added) (quoting Cohen v. Borough of Fair Lawn, 85 N.J. Super. 234, 237 (App. Div. 1964)); accord Park Ctr. at Route 35, Inc. v. Zoning Bd. of Adjustment of Woodbridge, 365 N.J. Super. 284, 291 (App. Div. 2004). In Cohen, the grant of relief from a prior condition attached to the variance was not premised on a demonstration of changed circumstances, but rather on "other good cause warranting a reconsideration by the local authorities." 85 N.J. Super. at 237 (citing Russell v. Bd. of Adjustment of Tenafly, 31 N.J. 58, 66 (1959)).

Plaintiff's applications before the Board never sought to remove the restriction imposed by the 1985 resolution that the Property always remain "open space," despite a clear change of circumstances since then.[8] In 1985, the Board intended the Property be conveyed to the homeowners' association or some other "responsible entity." An attempt to convey it to the City was unsuccessful. Judge Mendez recognized that the Property "was never intended to be owned by an individual."

Under the circumstances, plaintiff failed to demonstrate that either the Board's interpretation of the City's zoning regulations or the denial of a use variance to permit storage of her sailboat rendered the property inutile so as to constitute a regulatory "taking" of the Property.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

---

[8] Obviously, restrictions imposed on proposed development of the Property by the other limitation in the 1985 Board resolution — compliance with CAFRA — would not be within the Board's jurisdiction.