**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2146-22

RED OAKS HOMEOWNERS'
ASSOCIATION, LLC,

 Plaintiff-Respondent,

v.

PLANNING BOARD OF THE
TOWNSHIP OF LAKEWOOD,

 Defendant-Respondent,

and

YESHIVA TORA CHAIM,

 Defendant-Appellant.

_____

Argued April 16, 2024 – Decided May 6, 2024

Before Judges Mayer, Enright and Augostini.

On appeal from the Superior Court of New Jersey, Law Division, Ocean County, Docket No. L-0653-22.

Matthew N. Fiorovanti argued the cause for appellant (Giordano, Halleran & Ciesla, attorneys; Matthew N. Fiorovanti, of counsel and on the briefs).

Jonathan L. Leitman argued the cause for respondent Red Oaks Homeowners' Association, LLC (Law Offices of Jan Meyer & Associates, PC, attorneys; Jan Meyer and Jonathan L. Leitman, on the brief).

John J. Jackson III argued the cause for respondent Planning Board of the Township of Lakewood (John J. Jackson III & Associates, Attorneys at Law, LLC, attorneys; John J. Jackson III, of counsel and on the brief; Jilian McLeer, on the brief).

PER CURIAM

Defendant Yeshiva Tora Chaim (Yeshiva) appeals from a January 11, 2023 order denying its cross-motion for summary judgment and a January 12, 2023 order granting a motion for summary judgment on behalf of plaintiff Red Oaks Homeowners' Association, LLC (Association). Additionally, the Yeshiva appeals from a March 10, 2023 order denying its motion for reconsideration of the January 2023 orders. We affirm all orders on appeal.

We recite the history of the Yeshiva's development application presented to the Planning Board of the Township of Lakewood (Board) from the January 18, 2022 hearing transcript before the Board, the Board's March 1, 2023 resolution granting the Yeshiva's development application, and the judge's January 6, 2023 oral decision.

In December 2019, the Yeshiva filed an application with the Board for preliminary and final major site plan approval to construct a stand-alone dormitory adjacent to an existing school.

Several objectors retained counsel to voice opposition to the dormitory. The objectors' attorney sent a July 24, 2020 letter to the Board, arguing the Board lacked jurisdiction to review the Yeshiva's application to build a dormitory.

In December 2021, following receipt of the letter objecting to the dormitory, the Yeshiva submitted a revised preliminary and final major site plan application seeking consolidation of two existing lots and construction of a stand-alone dormitory (2021 Application). The proposed dormitory was located in the R-15 single family residential zone as designated per the Lakewood Township Uniform Development Ordinance (UDO). Pursuant to §18-902(D)(1) of the UDO, schools are permitted uses in the R-15 zone but stand-alone dormitories are not.

Prior to the Board's hearing on the 2021 Application, counsel for the objectors raised the same opposition previously articulated regarding the Yeshiva's prior application. The objectors claimed the Board lacked jurisdiction to consider the 2021 Application. The objectors argued the UDO did not permit

3

a dormitory in an R-15 zone and asserted the Yeshiva required use variance approval from the Township's Zoning Board of Adjustment.

At the January 18, 2022 public hearing, the Board initially declined to consider the objectors' jurisdictional argument. The Board proceeded to hear testimony from various expert witnesses in support of the 2021 Application.

After completion of the Yeshiva's testimony regarding the 2021 Application, the objectors' attorney addressed the Board. The objectors' counsel argued the Board lacked jurisdiction to review the 2021 Application because a dormitory was not an accessory use to the school. Counsel asserted the Yeshiva required a use variance to construct a dormitory in a residential zone and, therefore, the Township's Zoning Board of Adjustment was the proper forum to review the 2021 Application.

In response to the objectors' argument, the Board's attorney explained the Township historically considered a dormitory on the same lot as a school to be a customary, incidental, and accessory use to a school. Additionally, because the two existing lots owned by the Yeshiva were going to be consolidated, the Board's attorney opined "the issue of whether the dormitory is a freestanding use[] no longer exists."

4

Counsel for the objectors then voiced the neighboring residents' concerns regarding noise, lack of privacy, and the number of students associated with the proposed dormitory. According to testimony proffered by the Yeshiva, the dormitory would house approximately one hundred eighty students.

Following the objectors' arguments, the Board considered comments from members of the public regarding the 2021 Application. Those individuals cited noise and privacy concerns related to the proposed dormitory abutting their single-family homes.

At the conclusion of the hearing, the Board unanimously approved the 2021 Application. On March 1, 2022, the Board adopted a memorializing resolution. According to the resolution, the Board found "the granting of the application will not cause any detriment to the zone plan and zoning ordinance, and that the benefits of [the] same outweigh any detriments." Additionally, the resolution "recognized that in Lakewood specifically, a dormitory has been found to be an accessory use to a school."

The Association filed a complaint in lieu of prerogative writs alleging the Board lacked jurisdiction to hear the 2021 Application because the Yeshiva required a use variance under N.J.S.A. 40:55D-70 and only the Township's

5 <span></span>

Board of Adjustment could review a request for a use variance. The Yeshiva and the Board filed answers to the Association's complaint.

In November 2022, the Association moved for summary judgment to vacate the Board's approval of the 2021 Application. In December 2022, the Yeshiva filed opposition and cross-moved for summary judgment to dismiss the Association's complaint. On January 6, 2023, the judge heard legal arguments on the parties' summary judgment motions.

The Association argued a dormitory was not an accessory use to the school. The Association asserted a dormitory under the UDO was a primary principal use associated with a planned educational campus. Because the dormitory was not an accessory use to the school, the Association contended the Board lacked jurisdiction to consider the 2021 Application. Further, because the Association raised a legal question regarding jurisdiction, it argued the judge's review of the jurisdictional issue "should be plenary."

In response to the Association's arguments, the Board claimed, "a dormitory use is incidental to a school use and[,] [because] there's a close relationship to a school use in Lakewood Township . . . [,] thus should be considered an accessory use." When asked by the judge if the Township had an ordinance authorizing a dormitory as an accessory use in an R-15 zone, the

6

Board's attorney stated there was none. However, counsel explained the Board had "institutional knowledge" related to dormitories associated with schools within the municipality and relied on that knowledge in granting the 2021 Application.

Following the Board's arguments regarding the pending motions, the Yeshiva disputed the trial court's standard of review was de novo. Rather, the Yeshiva argued the judge should determine whether the Board's granting of the 2021 Application was arbitrary, capricious, or unreasonable. Additionally, the Yeshiva asserted the Board's findings in approving the application were entitled to substantial deference. The Yeshiva's attorney also argued "you can't have a dorm without a school. They go hand in hand." The Yeshiva further relied on the Board's "historical analysis" in granting its application based on the Board's prior approvals of schools with dormitories. Additionally, the Yeshiva asserted the dormitory met the definition of an accessory use under § 18-200 of the UDO notwithstanding the absence of dormitories on the list of accessory uses permitted in the R-15 zone.

After considering the parties' written submissions and oral arguments, the judge rendered a decision, based on the jurisdiction issue, as to whether the

Yeshiva required a use variance to construct a freestanding dormitory in the R-15 zone. The judge found:

> Lakewood Township has provided for dormitories to be a second primary use within an educational campus, and they provided an ordinance for that to address those standards. . . .
>
>  . . . [T]he question here is whether in the R-15 zone a dormitory building is considered an accessory use. There is no ordinance that addresses this. That's not disputed. Where the ordinance addresses it, it addresses that there is, that a dormitory would be a second primary use within an educational campus.

The judge concluded:

> I agree that the authority of the Board, the jurisdiction of the Board is driven not by a subjective analysis of what within the community of Lakewood the Board feels is appropriate and just in connection with an application, but what the law views and what is authorized under the Municipal Land Use Law. . . .
>
> And that's not only to protect the applicant so that the applicant is aware of what they have to address when they make an application, but also to protect the community and the people within the R-15 zone. . . .

Additionally, the judge stated:

> I cannot conclude that this is authorized under the existing land use ordinances affecting the R-15 zone in Lakewood Township. It's clear to the [c]ourt that this is a second primary use on the lot. It's not an accessory use even under an expansive definition.

A-2146-22

And viewed from an objective perspective of the case law as well as the application there, the fact that there has been a practice and a custom in Lakewood to approve these types of applications does not diminish the fact that a freestanding building which [is] sizable enough to provide for living accommodations and sleeping accommodations for [one hundred eighty] students is a reasonable [accessory] use to a school unless an application is made for a use variance.

. . . [I]t's clear to me that this would have required a use variance within the R-15 zone and that the prior history of approvals by the Board, in the [c]ourt's opinion, does not in any way create a right to consider something an accessory use under these circumstances.

. . . [T]he motion for summary judgment based upon the jurisdictional aspect is granted. The cross[-]motion is denied . . . [and] the approval is vacated. . . . I assume that a new application will be made to the Board of Adjustment for a use variance. . . .

The judge further found the proposed dormitory would be a highly intense use in a predominantly residential zone as it anticipated housing one hundred eighty students. Because the judge concluded the proposed dormitory was not "authorized under the existing land use ordinances affecting the R-15 zone in Lakewood Township," she determined the 2021 Application required a use variance.

After placing her factual findings and legal conclusions on the record, the judge entered a January 11, 2023 order denying the Yeshiva's cross-motion and

9

a January 12, 2023 order granting the Association's motion. For the reasons explained in her written decision, the judge vacated the Board's approval of the 2021 Application.

On January 31, 2023, the Yeshiva filed a motion for reconsideration of the January orders. Because the judge who entered the January 2023 orders retired, a different judge heard the Yeshiva's motion. On reconsideration, the Yeshiva argued the judge who granted summary judgment in favor of the Association "applied the wrong standard in reviewing the . . . Board's decision." The Yeshiva argued the summary judgment judge should have decided whether the Board's decision was arbitrary, capricious, and unreasonable, and deferred to the Board's approval because the 2021 Application presented a question of fact rather than a question of law. The Yeshiva also claimed the summary judgment judge erred in failing to consider the historic relationship between schools and dormitories in Lakewood. It also asserted the matter required a remand for the Board to render "further findings of fact between the relationship of a dorm and a school."

After considering the parties' written submissions and oral arguments, the reconsideration judge framed the issue as whether the summary judgment judge

A-2146-22

"applied the correct standard; whether it should have been a de novo standard, or the arbitrary and capricious standard."

The reconsideration judge found:

> It is clear . . . these issues were before [the summary judgment judge]. It is also clear, in reviewing page [twenty-eight] of the transcript, that [the summary judgment judge] addressed these in her decision.
>
> As a result, the [c]ourt finds that this does not come within the narrow corridor of properly reconsidering a matter. The [summary judgment judge]'s decision addressed the issues that were raised. . . . [I]t's not an appropriate basis to voice your dissatisfaction with the previous[] decision. [I am d]enying the motion for reconsideration for that reason.

Based on these findings, the reconsideration judge entered a March 10, 2023 order denying the Yeshiva's motion for reconsideration.

On appeal, the Yeshiva argues the summary judgment judge applied the wrong standard of review in granting the Association's motion for summary judgment. Further, the Yeshiva contends the summary judgment judge erred in finding the proposed dormitory was not an accessory use. In addition, the Yeshiva asserts the reconsideration judge erred in denying its reconsideration motion. We reject these arguments.

We review a judge's decision on a motion for summary judgment de novo, applying the same standard as the trial court. Samolyk v. Berthe, 251 N.J. 73,

78 (2022). We must consider "whether the competent evidential materials presented, when viewed in the light most favorable to the non-moving party, are sufficient to permit a rational factfinder to resolve the alleged disputed issue in favor of the non-moving party." Ibid. (quoting Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540 (1995)). See also R. 4:46-2(c).

We first address the jurisdiction argument. Whether a board has jurisdiction over an application is a legal question, which we review de novo. Pond Run Watershed Ass'n v. Twp. of Hamilton Zoning Bd. of Adj., 397 N.J. Super. 335, 350 (App. Div. 2008) (citing TWC Realty P'ship v. Zoning Bd. of Adj. of Twp. of Edison, 315 N.J. Super. 205, 211 (Law Div. 1998)) ("A board's decision regarding a question of law, such as whether it has jurisdiction over a matter, is subject to de novo review by the courts and thus is afforded no deference.").

Only a board of adjustment has statutory authority to hear a variance application under N.J.S.A. 40:55D-70(d) (colloquially known as a use variance or (d) variance). The board of adjustment has exclusive jurisdiction to "grant a variance to allow departure from regulations" to allow "a use or principal structure in a district restricted against such use or principal structure, [and] an expansion of a non-conforming use." N.J.S.A. 40:55D-70(d); see also Najduch

v. Twp. of Independence Plan. Bd., 411 N.J. Super. 268, 276-77 (App. Div. 2009) (noting the exclusive jurisdiction of boards of adjustment with respect to (d) variances). Under N.J.S.A. 40:55D-20, "[a]ny power expressly authorized by [the Municipal Land Use Law (MLUL), N.J.S.A. 40:55D-1 to -163], to be exercised by (1) [a] planning board or (2) [a] board of adjustment shall not be exercised by any other body, except as otherwise provided in this act.". Thus, the exercise of authority by a planning board in reviewing a (d) variance application is ultra vires. Tanenbaum v. Wall Bd. of Adj., 407 N.J. Super. 446, 460-61 (Law Div. 2006), aff'd o.b., 407 N.J. Super. 371 (App. Div. 2009). Where an applicant appears before the wrong board based on a lack of jurisdiction, any action taken by that board is a nullity. Trinity Baptist v. Louis Scott Hold, 219 N.J. Super. 490, 496-98 (App. Div. 1987).

Planning and zoning boards obtain their jurisdiction by statute, specifically the MLUL, which "enables and defines the limits of a municipality's procedural and substantive powers to regulate land development within its borders." Twp. of Franklin v. Hollander, 338 N.J. Super. 373, 387 (App. Div. 2001), aff'd o.b., 172 N.J. 147 (2002). Because they are created by statute, planning and zoning boards "may exercise only those powers granted by

A-2146-22

statute." Paruszewski v. Twp. of Elsinboro, 154 N.J. 45, 54 (1998) (quoting Cox, New Jersey Zoning and Land Use Administration § 4.2.1 (1997)).

A planning board's authority to grant or deny an application under N.J.S.A. 40:55D-60 is grounded on the planning board having jurisdiction. The MLUL expressly precludes a planning board's review of a (d) variance application. Therefore, where a (d) variance is necessary, only the board of adjustment has jurisdiction to review the application.

Having reviewed the record, we are satisfied the summary judgment judge properly considered the Association's jurisdiction issue as a question of law and appropriately applied a plenary standard of review. Because the jurisdiction issue was a legal question rather than a factual question, the judge did not err in declining to apply the arbitrary, capricious, and unreasonable standard of review.

We next consider whether the judge erred in concluding a dormitory was not an accessory use to the existing school. The Yeshiva and the Board conceded dormitories were not listed as accessory uses.

"Zoning ordinances frequently permit uses that are accessory or incidental to an expressly permitted use. However, they often do not define those permitted accessory uses, and courts must determine whether the proposed accessory use

is 'customarily incidental' to the main activity." Wyzkowski v. Rizas, 132 N.J. 509, 518 (1993). "[A]n accessory use is implied as a matter of law as a right which accompanies the principal use." Shim v. Washington Twp. Plan. Bd., 298 N.J. Super. 395, 401 (App. Div. 1997). "Zoning ordinances which permit 'customarily incidental' accessory uses to the main activity permit, by implication, any use that logic and reason dictate are necessary or expected in conjunction with the principal use of the property." Charlie Brown of Chatham, Inc. v. Bd. of Adj. for Twp. of Chatham, 202 N.J. Super. 312, 323 (App. Div. 1985).

To determine whether a particular use is accessory to a primary use, courts analyze whether the use bears a "close resemblance and obvious relation to the main use," and whether such a use is a "customary use." State v. P.T. & L. Constr. Co., 77 N.J. 20, 26-27 (1978). "Generally, a use which is so necessary or commonly to be expected that it cannot be supposed that the ordinance was intended to prevent it will be found to be a customary use." Id. at 27.

Our courts will evaluate an incidental use's commonality and impact to determine whether it should be deemed customary. Tanis v. Twp. of Hampton, 306 N.J. Super. 588, 604 (App. Div. 1997). Regarding the commonality factor, "the decision maker has a duty to 'determine whether it is usual to maintain the

use in question in connection with the primary use.'" Id. at 604-05 (quoting Charlie Brown, 202 N.J. Super. at 324). "The use must be further scrutinized to determine whether it has commonly, habitually and by long practice been established as reasonably associated with the primary use." Charlie Brown, 202 N.J. Super. at 324.

Here, the record failed to establish that dormitories adjacent to schools are common and usual. A dormitory is not necessarily common, customary, incidental, or obvious in relationship to a school as a primary use of a property. Schools commonly exist without dormitories, even in Lakewood.

Under the UDO, dormitories are permissible as primary uses in a planned educational campus. UDO §18-902(H)(6)(a)(5). If Lakewood considered dormitories to be accessory uses to every primary school use in the municipality, it could have enacted an ordinance delineating such structures as permissible instead of limiting dormitories to planned educational campuses. While the Yeshiva argued "dorms go hand in hand" with schools, the converse, that schools go hand in hand with dormitories, is neither obvious, usual, nor customary.

Regarding the impact factor, the focus is "the impact of the use on the surrounding neighborhood and the zoning plan." Tanis, 306 N.J. Super. at 606. Our case law recognizes the impact of a proposed accessory use on the

surrounding area "as an appropriate factor in determining whether the use is 'so necessary or commonly to be expected that it cannot be supported that the ordinance was intended to prevent it.'" Ibid. (quoting P.T. & L, 77 N.J. at 27).

While there may be other religious schools in Lakewood with dormitories, it cannot be said that a dormitory housing one hundred eighty students adjacent to several single-family residential homes would have no impact on surrounding properties. Moreover, based on the testimony in the record proffered by the Association and neighboring residents, the dormitory would have a negative impact on the character of the surrounding neighborhood. Applying the commonality and impact analysis to facts in this matter, the judge correctly concluded the proposed dormitory did not constitute an accessory use and the Yeshiva's 2021 Application required a use variance.

We next address the denial of the Yeshiva's motion for reconsideration. We review the denial of a motion for reconsideration under an abuse of discretion standard. Branch v. Cream-O-Land Dairy, 244 N.J. 567, 582 (2021). We will not disturb a judge's denial of a motion for reconsideration absent "a clear abuse of discretion." Pitney Bowes Bank, Inc. v. ABC Caging Fulfillment, 440 N.J. Super. 378, 382 (App. Div. 2015) (citing Hous. Auth. of Town of Morristown v. Little, 135 N.J. 274, 283 (1994)).

Reconsideration "is not appropriate merely because a litigant is dissatisfied with a decision of the court or wishes to reargue a motion." Palombi v. Palombi, 414 N.J. Super. 274, 288 (App. Div. 2010). Rather, reconsideration

> should be utilized only for those cases which fall into that narrow corridor in which either (1) the [c]ourt has expressed its decision based upon a palpably incorrect or irrational basis, or (2) it is obvious that the [c]ourt either did not consider, or failed to appreciate the significance of probative, competent evidence.
>
> [Ibid. (quoting D'Atria v. D'Atria, 242 N.J. Super. 392, 401 (Ch. Div. 1990)).]

Here, the reconsideration judge did not abuse his discretion in denying the Yeshiva's motion. The Yeshiva failed to present any new facts or additional information. Rather, in its motion for reconsideration, the Yeshiva re-asserted the same issues and facts presented to, and adjudicated by, the summary judgment judge.

To the extent we have not addressed any of the Yeshiva's remaining arguments, the arguments are without sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

18

A-2146-22